PEOPLE v PERRY

Docket No. 78682. Submitted June 5, 1985, at Grand Rapids.—Decided September 17, 1985. Leave to appeal denied, 424 Mich 857.

Randy Perry, an inmate at the Michigan Reformatory, was convicted of possession of a weapon following a jury trial in Ionia Circuit Court, James L. Banks, J. The charge arose out of defendant's possession of a pipe during an affray with another inmate. Defendant claimed that he had taken the pipe from the other inmate in self-defense. Defendant requested that the jury be instructed that, if defendant obtained possession of the pipe by reason of his disarming of an aggressor, defendant was not guilty under the possession of a weapon by an inmate statute. The trial court refused to give the requested instruction. Defendant appealed. *Held:*

1. The defendant was entitled to have the jury instructed that, if defendant had acquired the pipe purely in self-defense and intended to give the pipe to prison authorities at the first opportunity, defendant was not guilty of the charged crime of possession of a weapon. Since no such instruction was given and it cannot be said the instructions as given would have informed the jury that they should acquit if they believed defendant's testimony, reversal and remand for a new trial is mandated.

2. The prosecution, in the absence of any indication that the possession was authorized, need not establish the lack of authorization, since lack of authorization is not an element of the crime.

3. The trial was timely brought.

Reversed and remanded

1. PRISONS AND PRISONERS — WEAPONS — SELF-DEFENSE — JURY INSTRUCTIONS.

A prisoner being tried for possession of a weapon who claims that

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Penal and Correctional Institutions § 2. Am Jur 2d, Weapons and Firearms § 28.

Construction and application of 18 USCS § 1792 punishing mutinies, riots, and conveying of dangerous instrumentalities in federal penal or correctional institutions. 15 ALR Fed 748.

he came into possession of the weapon as a result of disarming another prisoner in self-defense is entitled to a jury instruction that, if the jury believed that the defendant had acquired the weapon purely in self-defense and had intended to give the weapon to the prison authorities at the first opportunity, the defendant would not be guilty of the crime of possession of a weapon by a prisoner (MCL 800.283; MSA 28.1623).

2. PRISONS AND PRISONERS — WEAPONS — BURDEN OF PROOF.

The prosecution in proceeding on a charge of possession of a weapon by a prisoner is not required to establish that the prisoner's possession of the weapon was not authorized, absent some indication that, in fact, the prisoner was authorized to possess the weapon (MCL 800.283; MSA 28.1623).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gary M. Gabry,* Prosecuting Attorney, *Susan A. Harris,* Assistant Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people.

*Frye, Mullendore & Carr* (by *G. R. Pete Frye),* for defendant.

Before: R. M. MAHER, P.J., and BEASLEY and SHEPHERD, JJ.

PER CURIAM. Defendant appeals as of right from a jury conviction of possession of a weapon by an inmate, MCL 800.283; MSA 28.1623. He was sentenced to serve from three to five years' imprisonment, said sentence to be served consecutively to his current sentence.

Defendant was charged with possessing a pipe, which he allegedly used to attack another inmate. At trial, defendant testified that he was attacked by the other inmate and that, in the struggle, he managed to pull the pipe from his attacker's hand. When the guards arrived on the scene, defendant was holding the pipe. In connection with this

testimony, defendant requested that the trial court give the following instruction to the jury:

"I instruct you that the defendant has a right to defend himself whether in prison or not. The right of self defense extends to and permits the taking of a weapon from another who would use that weapon offensively.

"If you believe that the defendant obtained possession of the pipe by taking it from an aggressor, and thereafter possessed the weapon in order to keep it away from an aggressor, without using it for offensive purposes, then the defendant must be found not guilty."

The trial court declined to do so, reasoning (as did the prosecutor) that, if the jury believed defendant's story, the jury would not convict him of possession, even without the requested instruction.

During closing arguments, the prosecutor made the following arguments to the jury:

"The question arises, if it's even relevant, arises about whether or not Mr. Perry was okay in having it [the pipe]. Should you let him have it in that circumstance. *Are you going to disregard the instructions that the Court gives you and say, 'Well, gee, if it happened like Perry said it happened, it was okay, because the other guy was going to hit him with it.'*

"So what did we expect him to do? Well, you have to look at this from two different points of view. One is, okay, it happened the way Perry said. So what? *You've promised you're going to follow the law, you've indicated to me the judge—in your voir dire questions, the law will be read to you, the instructions will be given, if you find that the facts fit that law, then you have a duty, because I've done what I said I would do, to come back with a verdict of guilty.*

"I haven't failed in any one of those elements. I've shown identity, I've shown that he had a hold of it, that he had it in his hand, possession, I've shown that he was a prisoner, and I've shown that he was at the

institution, and for that matter, you might hear that if the warden says it's okay for prisoners to have weapons, then it's not illegal, but basically, you heard from the guard that this man wasn't authorized to be lugging this piece of pipe around.

\* \* \*

*"And the Judge is going to tell you what possession [means], and he's not going to tell you it means it's okay to have it if you're going to fight or if one fought another one, then that doesn't matter, he's going to tell you it means to have or to hold, knowing what you had, and he knew that he had a pipe. And he knew, and he told you that he wasn't to have a pipe.*

"Ladies and gentlemen, please listen to the facts. Go into that court—into that jury room, see what was proven here today. The man had it, he held it, he didn't want anyone else to have it, he didn't want the guards to have it, and Mr. Scroggins wasn't hanging around to see what he intended on doing with it, and I don't want you to go in there and feel sorry for Mr. Scroggins either, I don't want you to go in there and feel sorry for anyone. *I want you to listen as the Judge gives you the instructions. See if that defense is made out. Apply the facts as we have proven them to the law, and do what you're sworn to do."* (Emphasis added.)

Following closing arguments, the trial court instructed the jury on the offense of inmate in possession of a weapon:

"Turning our attention now to the offense charged. [T]he statute of the written law of the State of Michigan provide[s] as follows: Unless authorized by the chief administrator of the correctional facility, a prisoner shall not have in his or her possession or under his or her control a weapon or other implement which may be used to injure a prisoner or other person. That's the simple statement of the law from the statute.

"As in every criminal offense, there are certain elements which you must find to have been satisifed by the evidence and that you must be convinced have been

shown beyond a reasonable doubt. The elements in this offense, I will review those with you in a moment.

"The elements of this offense must all be shown, and if you find that any one of them have not been shown beyond a reasonable doubt, then you would find the defendant not guilty.

"In this case, you must find from the evidence that the defendant, Randal Perry—or Randy Perry was a prisoner of a correctional facility. You must find that he possessed an object or the object in question, and you must find that the object in question was a weapon or an implement which can be used to injure a person—injure a prisoner or another person.

"Now, in the absence of any evidence of authorization for him to possess this object, you may infer that the defendant did not have authorization to possess this object.

"To possess means to have or hold the property or a thing, in this case, under one's control while knowing the nature of the object or thing. The evidence must also convince you beyond a reasonable doubt that the crime occurred in Ionia County in the State of Michigan, and that occurred on or about August 24th, 1983."

Thirty-eight minutes after receiving these instructions, the jury returned a guilty verdict.

On appeal, defendant argues that he was denied his right to a properly instructed jury by the court's refusal to give his requested instruction. The prosecution responds to this claim by arguing that:

"[T]he offense charged was possession of a weapon. Consequently, the jury *could* have found (if they chose to accept the testimony of defendant-appellant) that he did not 'possess' the lead pipe but had merely removed it from the possession of inmate Scroggins in order to prevent any harm to himself.

\* \* \*

"It is also clear that had the jury decided to give any credence to defendant-appellant's theory (to the effect

that he was merely relieving inmate Scroggins of a dangerous weapon in order to protect himself) they were free to find that he did not possess a weapon in contravention of the statute. Thus, the instructions as given by the judge accommodated both the theory propounded by the prosecution as well as that of the defense."

We are unable to agree that the jury might have ignored the trial court's instructions on the elements of the offense as well as the prosecutor's explicit and repeated admonitions to "do what you're sworn to do" and "follow the law" as provided by the court's instructions. Nothing in the instructions given the jury even suggested that, if defendant had "possessed" the pipe merely by removing it from the hand of his attacker, he was not guilty of the crime of possession of a weapon. Instead, the entire thrust of those instructions, especially when augmented by the prosecutor's arguments at trial, was that "mere possession" was a sufficient basis for conviction. Therefore, if defendant was entitled to the instruction, his conviction must be reversed.

We believe that defendant was entitled to have the jury instructed that, if the jury believed that defendant had acquired the pipe purely in self-defense and had intended to give it to the guards at the first opportunity, defendant was not guilty of "possessing" the weapon. The statute, MCL 800.283; MSA 28.1623, does not expressly provide for such an instruction. However, without such an instruction, the statute would, in effect, impose strict liability upon any prisoner found holding a weapon. As a general rule, strict liability will not be presumed in a criminal penal statute:

"The contention that an injury can amount to a crime only when inflicted by intention is no provincial

or transient notion. It is universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. * * *

"Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. As the states codified the common law of crimes, even if their enactments were silent on the subject, their courts assumed that the omission did not signify disapproval of the principle but merely recognized that intent was so inherent in the idea of the offense that it required no statutory affirmation." *Morissette v United States,* 342 US 246, 250-252; 72 S Ct 240; 96 L Ed 288 (1952)(footnotes omitted), quoted in *United States v Commodore Club, Inc,* 418 F Supp 311, 319 (ED Mich, 1976).

This is particularly true when dealing with a possessory offense:

" 'Possession' is an ambiguous term derived from the Roman law. It has variant connotations; but on well-settled principle the word is to be given a strict construction in statutes defining criminal and penal offenses. It signifies an intentional control and dominion. *Bergedorff v United States,* 10 Cir., 37 F 2d 248 (1929). *Animus possidendi* is of the essence of possession. Such was its primary meaning under Roman law. 'Possession is the occupation of anything with the intention of exercising the rights of ownership in respect to it.' Hunter, Rom. Law 209. Under the cited statutes, 'possession' imports 'corporeal possession in fact. * * * The elements of this possession are: First, the mental attitude of the claimant, the intent to possess, to appropriate to oneself; and, second, the effective realization of this attitude. Effective realization involves the relation of the claimant to other persons, amounting to a security for their noninterference, and the relation of the claimant to the material thing itself, amounting to a security for exclusive use at will. All the authorities agree that an intent to exclude others must coexist with

the external facts, and must be fulfilled in the external physical facts, in order to consitute possession. It is this requirement which prevents the man in whose building, or automobile, or traveling bag, or pocket, liquor is found, which was surreptitiously placed there by another, from being a violator of the law.' " *State v Labato,* 7 NJ 137; 80 A2d 617 (1951).

We conclude that defendant's conviction must be reversed and that, on retrial, the jury should be instructed in accordance with this opinion.

Defendant next challenges the sufficiency of the evidence presented at the preliminary examination. Defendant moved prior to trial to quash the information on this ground. We find that sufficient evidence of both defendant's lawful assignment to the Michigan Reformatory and of his lack of authorization to have a weapon was presented. Defendant was identified as an inmate of the reformatory by one of the guards. In addition, while the statute refers to a prisoner possessing a weapon "without authorization", this does not establish the lack of authorization as an element of the crime but instead acknowledges that a prisoner might be authorized to possess a weapon. In the absence of any indication by defendant that he was authorized to possess the pipe, the prosecution had no burden to prove the absence of authorization. See *People v Henderson,* 391 Mich 612; 218 NW2d 2 (1974).

Defendant's final argument on appeal is that the trial court lost jurisdiction over his case because he was tried 184 days after the issuance of the complaint, thus violating MCL 780.131; MSA 28.969(1). We disagree. The record shows continued good-faith action by the prosecutor to proceed promptly to trial; the only uncommon delays were those caused by two adjournments of the preliminary examination at defendant's request.

Reversed and remanded for a new trial.