PEOPLE v BLAIR

Docket No. 86019. Submitted March 5, 1986, at Grand Rapids. Decided January 5, 1987. Leave to appeal applied for.

Gary T. Blair was convicted of being an inmate in possession of a weapon, following a jury trial in the Ionia Circuit Court, James L. Banks, J. Defendant received a prison term of from three to five years to be served consecutive to the prison term he was serving when the charge arose. Defendant appealed, claiming that the trial judge erred in preventing him from presenting a defense of duress to the weapons charge.

The Court of Appeals *held:*

1. An inmate successfully raises the defense of duress in a prosecution for being an inmate in possession of a weapon when he presents evidence from which a jury could conclude that (1) the threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm; (2) the conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant; (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act; and (4) the defendant committed the act to avoid the threatened harm. Additionally relevant when determining whether the defendant has a valid claim of duress are: (1) the possibility of complaining to the proper authorities; (2) the history of complaints made by the defendant; (3) the futility of complaining; and (4) the time or opportunity to resort to the courts.

2. In this case, defendant had sufficiently presented a prima facie case of duress and the trial court erred in precluding defendant from presenting such a defense at trial.

Reversed and remanded for a new trial.

K. N. HANSEN, J., concurred in result only.

1. CRIMINAL LAW — DURESS — MENS REA.
A successful defense of duress excuses the defendant from crimi-

REFERENCES
Am Jur 2d, Criminal Law §§ 146-148.
Am Jur 2d, Duress and Undue Influence §§ 30-34.
Coercion, compulsion, or duress as defense to criminal prosecution. 40 ALR2d 908.

nal responsibility for an otherwise criminal act because the defendant was compelled to commit the act; the compulsion or duress overcomes the defendant's free will and his actions lack the required mens rea.

2. CRIMINAL LAW — DURESS — EVIDENCE.

A defendant successfully raises the defense of duress in a prosecution for being an inmate in possession of a weapon when he presents evidence from which a jury could conclude that: (1) the threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm; (2) the conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant; (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act; and (4) the defendant committed the act to avoid the threatened harm.

3. CRIMINAL LAW — DURESS — JURY QUESTION.

The defense of duress in a criminal case is a question for the jury.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gary M. Gabry,* Prosecuting Attorney, and *Tonatzin M. Alfaro Garcia,* Assistant Attorney General, for the people.

*William A. Van Eck,* for defendant on appeal.

Before: D. F. WALSH, P.J., and HOOD and K. N. HANSEN,* JJ.

HOOD, J. Following a jury trial, defendant was convicted of being an inmate in possession of a weapon, namely, a sharpened spoon, MCL 800.283(4); MSA 28.1623(4), and was sentenced to from three to five years imprisonment, the term to run consecutive to the sentence defendant was already serving. In this appeal as of right, defendant's sole appellate issue concerns the availability of the defense of duress to a charge of being an inmate in possession of a weapon.

At trial, defendant admitted that he was incar-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

cerated in the Michigan Reformatory in Ionia and
that a sharpened spoon had been taken from him
by a guard during a "shakedown." The corrections
officer testified that he decided to shakedown a
small group of inmates after he reviewed a log
book which showed that a fight had taken place
between some inmates the night before. At trial,
defendant admitted that he planned to use the
sharpened spoon to defend himself because he
believed that he was in danger from other in-
mates. However, defendant was not allowed to
further explain why he believed he was in danger
because the trial court ruled that the defense of
duress was unavailable to him.

Prior to trial, defendant made a motion to hire
an investigator or for the authorization of funds so
that his attorney could locate and interview in-
mate witnesses who defendant alleged could help
his case. Defendant alleged that six other inmates
would testify that a group of inmates were going
to do physical harm to him and that his request
for help from two corrections officers had been
ignored. Three of these inmates had allegedly seen
defendant approach a corrections officer about the
threats. Defendant also alleged that another cor-
rections officer knew of the threats.

Following the submission of briefs on the ques-
tion of the availability of the duress defense, the
trial court stated that, even if the duress defense
was available to defendant, the defendant had
failed to make a prima facie showing that he was
entitled to the defense by showing: (1) that the
threats made against him had placed him in im-
mediate danger; (2) that he had made complaints
to the authorities which were ignored; (3) that
there was no opportunity to resort to the courts;
and (4) that he would not harm anyone by commit-
ting the crime. The judge then ruled that duress

would be a proper defense to an inmate in possession charge, but because defendant had failed to present a prima facie case of duress, he was not entitled to assert the defense at trial. The court then denied defendant's original motion for money to hire an investigator.

When defendant's first trial ended in a mistrial, he again filed notice of his intention to assert a duress defense and submitted an affidavit in support of his motion. In his affidavit, defendant alleged that he was threatened by several inmates, but when he reported the threats to a floor guard, Bruce Hulander, the guard told defendant that defendant "had a personal problem" and should go to his cell. The guard allegedly ignored his request for permission to report the problem to Inspector Ward.

Defendant further averred that, the same day, each time Officer Gorby made his rounds, defendant informed him that he "needed to discuss this problem," but Officer Gorby kept telling him he was busy, but he would talk to him later. Defendant remained in his cell during both lunch and dinner apparently because the attack was supposed to occur in the mess hall. That night he acquired a spoon and sharpened it on the floor of his cell. He went to breakfast in the morning "with the intent of getting to the control center," but before he could the weapon was discovered.

The court, reasoning that to permit the duress defense would be tantamount to authorizing inmates to arm themselves, ruled that the duress defense was unavailable for public policy reasons. The judge then held that, even if a duress defense was available, defendant was not entitled to assert it under the circumstances. Subsequently, the court signed an order precluding defendant from raising the defense.

At trial, the court ruled that, even though defendant could not assert a duress defense by presenting other witnesses, he could testify as to duress himself. Defendant testified that he possessed the sharpened spoon because he feared for his life as the result of an incident that had occurred the previous day. When defense counsel asked him what had happened, the prosecutor's relevancy objection was sustained. Defendant said that he knew he was going to be searched but he did not run and was actually relieved when the spoon was found because he knew that he would be segregated from the rest of the inmates. When he began to testify that he had asked to be voluntarily segregated the previous day, the trial court again sustained the prosecutor's objection to the testimony.

The judge declined to give the duress instruction requested by defendant. The jury then returned with a guilty verdict.

MCL 800.283(4); MSA 28.1623(4) provides:

> Unless authorized by the chief administrator of the correctional facility, a prisoner shall not have in his or her possession or under his or her control a weapon or other implement which may be used to injure a prisoner or other person, or to assist a prisoner to escape from imprisonment.

In *People v Perry,* 145 Mich App 778; 377 NW2d 911 (1985), this Court refused to hold that the statute imposed strict liability upon any prisoner found holding a weapon. The Court ruled that the defendant was entitled to have the jury instructed that, if defendant had acquired the weapon purely in self-defense and intended to give the weapon to prison authorities at the first opportunity, he was not guilty of possession of a weapon. In *Perry,*

defendant claimed that he had taken the weapon, a pipe, from another inmate during an affray and he was merely attempting to disarm the aggressor. The Court reasoned that strict liability should not be presumed in a criminal penal statute. 145 Mich App 783-784.

The defense of duress has been recognized by the appellate courts of this state where an inmate is charged with escape. In *People v Luther,* 394 Mich 619, 622; 232 NW2d 184 (1975), the Supreme Court stated:

> [D]uress is a well recognized defense. *People v Repke,* 103 Mich 459; 61 NW 869 (1895), and *People v Merhige,* 212 Mich 601; 180 NW 418 (1920). A successful duress defense excuses the defendant from criminal responsibility for an otherwise criminal act because the defendant was compelled to commit the act; the compulsion or duress overcomes the defendant's free will and his actions lack the required *mens rea.*

The defendant in *Luther* testified that he was confronted in a lavatory by six unknown assailants who made homosexual demands of him. When the defendant refused to submit to the acts suggested, he was beaten with a toilet bowl brush, had a knife waved in his face, was knocked down or fell down, hitting his face, and was chased off the grounds of Camp Waterloo. The defendant testified that, as he was running away, he tried to find a guard to help him, but was unsuccessful.

The trial court had instructed the jury that fear of a homosexual attack was not a valid defense. The Supreme Court disagreed, holding:

> A defendant successfully raises the defense of duress when he presents evidence, as here, from which a jury could conclude:

A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;

B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm. [*Luther, supra,* p 623.]

The Court also noted that the following factors might be relevant in determining whether defendant had a valid claim of duress: (1) the possibility of complaining to the proper authorities; (2) the history of complaints made by the defendant; (3) the futility of complaining; and (4) the time or the opportunity to resort to the courts.

In the instant case, the trial court relied upon the last four factors set forth in *Luther,* and concluded that, even if the duress defense was available to defendant, he had failed to present a prima facie case of duress. We disagree. We note that there was no evidence that force or violence was actually involved in the instant weapon-possession charge. Moreover, defendant's affidavit did aver that he had no time or opportunity to resort to the courts, and he alleged that his complaints to the authorities had been futile. Finally, whether defendant had a reasonable fear of death or serious bodily harm that caused him to possess the weapon requires a subjective inquiry into defendant's mental state that presents a factual question for the jury.

The Supreme Court in *Luther,* citing *People v McClintic,* 193 Mich 589; 160 NW 461 (1916), concluded by holding that the question of whether defendant was acting under duress was a jury

question. Shortly before *Luther* was decided, this Court in *People v Harmon,* 53 Mich App 482, 487; 220 NW2d 212 (1974), also an escape case, explained that duress is a factual question for the jury, because

> [i]t is not our function in deciding this case to judge the veracity or claims of future prisoners who might maintain that their escape was necessitated by such indignities. The credibility to be accorded such tales lies solely within the province of the fact-finder and is to be determined within the facts of each case as it arises.

We therefore hold that the factors set forth in *Luther* are applicable where a defendant interposes a duress defense to charges brought under MCL 800.283(4); MSA 28.1623(4). In this case, defendant's affidavit and his motion for funds to hire an investigator made out a prima facie case of duress. They also provided the prosecutor with sufficient information to allow him to investigate and to acquire information which might rebut this defense beyond a reasonable doubt. See *People v Field,* 28 Mich App 476, 478; 184 NW2d 551 (1970). It was error for the trial court to preclude defendant from the opportunity to offer a full presentation of this defense.

We also disagree with the trial court's conclusion, based on public policy reasons, that to permit the duress defense would be tantamount to authorizing inmates to arm themselves. We believe this fear to be groundless for reasons similar to those set forth in *Harmon, supra,* where it was argued that the recognition of the duress defense in escape cases might invite a rash of escapes, all rationalized by unverifiable tales of sexual assault:

> First, it is to be remembered that simply be-

cause an escapee alleges that he escaped to avoid homosexual attacks will not suffice to prevent a conviction. The defense, as outlined above, must be established by competent evidence in a trial where the testimony of witnesses is subjected to the scrutiny of the fact-finder who, in the course of determining the true facts of the case, would properly consider the credibility of the various witnesses. [53 Mich App 487.]

Moreover, the fact that a defendant faces a heavy burden to convince the factfinder that all of the *Luther* factors are present provides ample safeguards against a broad interpretation of the applicability of this defense. The trier of fact must find that defendant had a present, imminent, impending, and well-grounded apprehension of death or serious bodily harm that was more immediate than a threat of future injury in order to justify his possession of the weapon. Finally, we also note that, by the better authorities, the conditions which caused the duress must have arisen without the negligence or fault of the defendant. *Merhige, supra,* p 611; 22 CJS, Criminal Law, § 44, pp 135-136.

Accordingly, defendant's conviction is reversed and the case is remanded for a new trial.

K. N. HANSEN, J., concurred in result only.