STATE of Missouri, Respondent,

v.

Mason VANDIVER, Appellant.

No. WD 39961.

Missouri Court of Appeals,
Western District.

Sept. 20, 1988.

Tim Wynes, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before COVINGTON, J., Presiding and NUGENT and GAITAN, JJ.

COVINGTON, Judge.

Defendant appeals his conviction for possessing a weapon in or about the premises of a correctional institution in violation of § 217.360.1(4), RSMo 1986. After a jury trial, defendant was convicted and sentenced to a seven-year term.

The single issue in this case is the defendant's claim that the trial court erred in refusing to give an instruction on the defense of justification to the charge of possessing a weapon in or about the premises of the correctional institution. The judgment and conviction are affirmed.

Since September, 1978, defendant has been an inmate of the Missouri State Penitentiary, serving two life sentences for two murder convictions and a robbery conviction. While in prison, defendant developed a sexual relationship with another inmate, Jerome Wise. Both defendant and Wise lived in a protective custody housing unit within the penitentiary.

On August 21, 1986, defendant and Wise became involved in an altercation with a third prisoner, Willie Jackson, who lived in the same protective custody housing unit. According to defendant's testimony, Jackson wanted to have a sexual relationship with Wise. Jackson walked over to defendant's wing of the housing unit to confront Wise. During the confrontation, Jackson hit Wise in the mouth. Defendant intervened and scuffled with Jackson.

According to defendant, Jackson returned later that day and brandished a handmade knife. Two other inmates—Steven Taylor and Ira Harris—separated Jackson from defendant and Wise. Defendant testified that Jackson then handed his knife to Taylor and tried to explain to defendant why he was justified in striking Wise. During the explanation, Jackson attempted to reach around defendant to strike Wise again. Defendant prevented this attack by pushing Jackson against the bars of the cell. Jackson then left and told defendant, "I'll see you in the morning."

Defendant testified that Jackson pulled a knife on defendant outside of defendant's cell the following morning after breakfast. According to defendant, Jackson threatened to kill him before the two were again separated by Harris and Taylor. As Jackson left, he told defendant, "I'm going to get you at lunchtime." Harris testified that at this time Jackson said he was going to kill defendant.

Subsequent to the third encounter, defendant "sent for" a knife, which he carried with him to lunch. He testified that, on his way to lunch, he was met by Harris who told him to "watch out." Defendant and Wise encountered Jackson outside the dining hall and, according to defendant, Jackson repeatedly reached his hand into his jacket from which defendant inferred Jackson was carrying a knife.

There was conflicting evidence on the question of whether Jackson was armed at the time of this encounter. Dewey Odell Hopper, an inmate who testified on behalf of defendant, stated that Jackson was carrying a knife at the time. Tim Huesgan, a correction officer who interviewed defendant after the incident, testified that defendant had told him that Jackson was not armed. Huesgan's written report of the incident, however, did not contain this information.

The defendant testified that, when he and Wise encountered Jackson outside the dining hall, they pulled weapons on Jackson and Jackson ran away. According to Hopper, Jackson did not have an opportunity to use his knife before he fled the scene.

Following this skirmish, a nearby guard called for defendant and Wise to "halt," but defendant and Wise continued to the dining hall where they proceeded to the back corner of the room and sat at a table

with their backs to the wall. There, defendant and Wise were confronted by Lieutenant Keeth, an officer with the Department of Corrections, who requested that they surrender their weapons. Defendant and Wise refused, stating that they were still afraid of being attacked. Officer Keeth assured defendant and Wise that the officers present would not permit anything to happen to them, and the pair of them surrendered their weapons. Keeth did not observe defendant making any threatening gestures towards any other prisoner.

Defendant testified that Jackso.. had been attempting to cause problems for him and Wise for quite awhile and that he had not reported the first two instances to prison authorities because "it wouldn't have done any good." According to the testimony of another corrections officer, Michael Plemmons, however, an inmate assigned to defendant's housing unit could request to be assigned to a lower level of protective custody should he feel threatened by another inmate in the unit.

On appeal defendant contends the trial court erred in refusing to instruct the jury on "justification" as a defense. He argues that the evidence established that, through no fault of his, imminent death or serious physical harm was about to occur and that his conduct was necessary as an emergency measure to avoid injury or death and, further, that the avoidance of injury or death far outweighed any harm.

Defendant's instruction was modeled on MAI–CR 3d 308.20, which is based on § 563.026.1, RSMo 1986, which recognizes and defines the defense of justification in a criminal action:

[C]onduct which would otherwise constitute any crime other than a class A felony or murder is justifiable and not criminal when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability of avoiding the injury outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the crime charged.

The defense referred to in § 563.026 as "justification" is also known as the defense of "necessity." The two terms are, for all practical purposes, functionally synonymous. *State v. Diener,* 706 S.W.2d 582, 585 (Mo.App.1986); *State v. Kirkland,* 684 S.W.2d 402, 404 (Mo.App.1984).

Justification is an affirmative defense. § 563.026.3. An affirmative defense is a defense which need not be submitted to the trier of fact unless supported by evidence. § 556.056(1), RSMo 1986. If submitted, the defendant has the burden of persuasion that the defense is more probably true than not. § 556.056(2). An instruction on the defense of justification, consequently, need not be given unless the court determines that the facts and circumstances, if true, are legally sufficient to establish the defense. § 563.026.2; Note on Use for MAI–CR3d 308.20.

■ Respondent contends that no Missouri case has directly considered whether the defense of justification is available to a prisoner charged with possession of a weapon inside a penal institution. This court, however, has stated that the defense could be interposed if the evidence supports the submission. *State v. Robinson,* 710 S.W.2d 14, 16 (Mo.App.1986). In *Robinson,* refusal to instruct on the defense of justification was raised by the defendant-inmate as error after his conviction of possession of a weapon on the premises of a correctional institution. Defendant testified that he acquired a knife in self-defense because he took it away from an attacker. Officers ordered the defendant to drop his knife. The defendant continued to advance toward the officers until the officers chambered shells in their shotguns after which defendant then threw down the weapon and surrendered. Emphasizing the statutory requirement that an instruction on the defense of justification is warranted only when the alleged criminal conduct was occasioned by a situation which developed through no fault of the defendant, the court found that the instruction for the

defense of justification was properly refused because the evidence demonstrated that the defendant was at fault in retaining possession of the knife when he could have safely surrendered it.

■ Missouri courts have directly considered and recognized necessity as a defense to the crime of escaping confinement. *State v. Daniels*, 641 S.W.2d 488 (Mo.App. 1982); *State v. Baker*, 598 S.W.2d 540 (Mo. App.1980). Founded in policy considerations, the defense of necessity involves a balancing test "to be applied by ordinary standards of intelligence and morality to the desirability of avoiding the injury threatened to the public or private right against the injury sought to be prevented by the criminal act to which the defense is directed." *Baker*, 598 S.W.2d at 544. Our court found in *Baker* that the only basis for a defense of justification or necessity is the imminent danger of injury and that the danger must arise suddenly and without opportunity for complaint or legal process. *Baker*, 598 S.W.2d at 546.

Defendant contends that *Baker* supports the defense of necessity in his case and should be extended to cases involving possession of deadly weapons by prisoners. Possession of a deadly weapon by a prisoner, however, is a problem clearly distinct from the problem of escape. The policy considerations stated in *Baker* should be considered in the context of the policy considerations inherent in § 563.026.1, the purpose of which is clearly to protect inmates and officers from assaults with dangerous weapons perpetrated by armed prisoners.

Other jurisdictions which have confronted the issue of whether the defense of necessity is available to the charge of an inmate's unlawful possession of a weapon have rejected the defense in the context of the present case. In *People v. Velasquez*, 158 Cal.App.3d 418, 204 Cal.Rptr. 640 (1984), the defendant admitted that he was making a knife at the time he was confronted by a corrections officer. His stated purpose in making the knife was for "protection." Earlier that day he had been attacked in his cell by four inmates. He reported the attack but did not identify his attackers. The officer told the defendant to return to his cell. The defendant requested that something be done, such as a transfer. The officer told defendant that if he did not go back to his cell he would be locked in solitary confinement. Although the defendant acknowledged that he would have been safe in solitary confinement, he returned to his cell and made the knife because the officers earlier had done nothing about the attack on him. The California court held that arming for self-defense against a future anticipated attack was not a defense to the crime of possessing a weapon while in jail. The court's holding was based upon the purpose of the statutes which prohibit possession of a weapon in confinement, which is to protect inmates and officers from assaults with dangerous weapons perpetrated by armed prisoners. The court noted that the purpose of the statute would be frustrated were prisoners allowed to arm themselves in proclaimed or actual fear of anticipated attack by other inmates. The court recognized that the defendant was not in immediate danger because he was not under attack when found in possession of the deadly weapon. Further, the court stated:

A jail in which the prisoners could assert a court approved "right" to possess deadly weapons for protection would be impossible to administer humanely and safely. The very existence of the weapons inevitably invites their use on other inmates and correctional officers. That is why our statutes prohibiting such possession by prisoners have always been construed to be absolute, and to permit no defense based on a claim of protection against future attack.

*Velasquez*, 158 Cal.App.3d at 422, 204 Cal. Rptr. at 643. *See also, People v. McKinney*, 187 Cal.App.3d 583, 231 Cal.Rptr. 729 (1986); *Carter v. State*, 312 So.2d 494 (Fla. Dist.Ct.App.1975); *State v. Morbeck*, 22 Wash.App. 404, 589 P.2d 823 (1979).

■ Jurisdictions which have recognized the defense of necessity in a criminal action for possession of a weapon by an inmate have done so only under extremely narrow circumstances. Where an unarmed prison-

er is attacked by another prisoner who is carrying a weapon and the unarmed prisoner takes the weapon away from his aggressor, then the would-be victim will not be prosecuted for his temporary possession of the weapon which he has wrested from his attacker. *People v. Perry,* 145 Mich.App. 778, 377 N.W.2d 911 (1985); *Mungin v. State,* 458 So.2d 293 (Fla.Dist.Ct.App.1984).

The facts of the present case do not meet the narrow exception to the otherwise general refusal to allow the defense of necessity in a criminal action for possession of a weapon by an inmate nor do the*j* meet the requirements of § 563.026.1. Furthermore, in spite of defendant's contentions, the facts do not support the finding even under *Baker,* which requires exhaustion of other remedies or evidence that attempts to do so had been futile when applying the necessity defense to the unique environment of a prison. *Baker,* 598 S.W.2d at 546. The defendant did not report the first two confrontations with Jackson, and he sought no relief from the options then available within the prison's system. There was an alternative remedy of assigning the defendant to a different level of protective custody. The only reason for defendant's failure to seek such remedy was his own subjective belief that it would be to no avail. The defendant admitted, nevertheless, subsequent to the incident with which he was charged, that he and Jackson were placed in separate housing units and had not seen each other since the incident.

The defendant was not faced with an "emergency situation" and he was not threatened with "imminent" physical injury from Jackson. The defendant not only had time to report Jackson's prior threats and possession of a knife but also had time to send for knives for himself and Wise and to plot his strategy for dealing with the confrontation with Jackson. Even assuming, arguendo, that the defendant faced an imminent threat of injury from Jackson when he first armed himself, any such threat abated once Jackson fled toward the control center and the defendant and Wise were approached by corrections officers.

Nevertheless, the defendant ignored orders from the guard to "halt" and instead proceeded to the dining room. When ordered to surrender his weapon in the dining room, the defendant refused to do so and refused to give himself up until after the guards cleared the hall of the other inmates.

If the defendant's proffered defense were accepted in this case, it would have the effect of providing inmates with the right to carry a knife or other deadly weapon in self-defense since prisons are in part populated by violent criminals, many of whom might pose a threat to the safety of other inmates. Such effect obviously contravenes the purpose of § 563.026.1.

The facts of this case do not support a submission of the defense of justification. Accordingly, the judgment and conviction are affirmed.

All concur.