PEOPLE v TRAVIS

Docket No. 99080. Submitted December 12, 1989, at Lansing. Decided February 21, 1990.

Namon Travis and another prisoner at the Huron Valley Men's Prison Facility took two prison employees hostage at knifepoint, took another hostage not at knifepoint, and held them until officials agreed to transfer Travis to a federal correctional facility rather than to the state prison facility at Jackson. Travis was charged in Washtenaw Circuit Court with three counts of taking a hostage while a prisoner in a correctional facility. The prosecution brought a motion in limine to preclude defendant from raising the defense of duress. Defense counsel argued that duress should be a defense and offered to present proofs showing that defendant had been threatened with death by prisoners and guards at the Jackson facility. The trial court, William F. Ager, Jr., J., ruled, as a matter of law, that duress was not a defense and granted the prosecution's motion. Because defendant and defense counsel were displeased with the inability to present the defense of duress, defense counsel took no active part in the trial, defendant did not testify and defense counsel's closing statement was to the effect that the trial was unfair and neither defendant nor defense counsel would have any part of it. Defendant was convicted on all three counts and appealed.

The Court of Appeals *held:*

1. The trial court properly held, as a matter of law, that duress was not a defense to the crime charged.

2. Since the trial court record does not adequately explain why the trial court permitted defense counsel to act as he did, remand is necessary for consideration of the question of whether defendant was denied effective assistance of counsel.

Affirmed in part and remanded.

REFERENCES

Am Jur 2d, Penal and Correctional Institutions §§ 123, 148-150.

See the Index to Annotations under Abduction and Kidnapping; Duress and Coercion; Hostages; Prison Guards or Officials; Prisons and Prisoners.

CRIMINAL LAW — PRISONERS — HOSTAGES — DURESS.
  Duress is not a defense to a charge of taking a hostage while imprisoned in a correctional facility (MCL 750.349a; MSA 28.581[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *David A. King,* Assistant Prosecuting Attorney, for the people.

*Douglas Hamel,* and *Frank Singer,* of Counsel, for defendant.

Before: REILLY, P.J., and CYNAR and T. M. BURNS, * JJ.

PER CURIAM. On September 15, 1987, following a jury trial, defendant, Namon Travis, was convicted of three counts of taking another hostage while a prisoner, MCL 750.349a; MSA 28.581(1). Defendant was subsequently sentenced to thirty to eighty years on Count I, twenty-five to eighty years on Count II, and twenty to eighty years on Count III, with all sentences to run concurrently, but consecutive to defendant's existing sentence. Defendant appeals as of right, claiming that the trial court erred in granting the prosecutor's pretrial motion to prevent defendant from asserting the defense of duress and that he did not receive effective assistance of counsel at trial.

This case arises out of a hostage taking incident which occurred at the Huron Valley Men's Prison Facility on January 15 and 16, 1986. At approximately 10:30 A.M. on the 15th defendant and Elvis Williams, both inmates at the prison, entered the prison commissary and took hostage at knifepoint Ronald Desbrough and Jack Saren, two employees

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

of the food services department. Dennis Easley, another prison employee, was also taken hostage, but was not held at knifepoint. Defendant and Williams then barricaded themselves and the hostages inside the commissary.

At some point on January 15, defendant and Williams released Easley in exchange for a television, cigarettes and toilet paper. During negotiations with police, the desire to be transferred to a federal penitentiary was the only explanation given by defendant and Williams as to why the two took the hostages. After authorities promised to transfer defendant to a federal penitentiary and after a conversation with defendant's brother, defendant and Williams released Saren and Desbrough and surrendered at 4:30 P.M. on January 16, 1987.

By motion in limine, the prosecution moved to preclude defendant from raising the defense of duress. Defendant alleged that he acted out of duress when he learned that he was scheduled to be transferred the next day (January 16, 1986) to the Jackson prison facility, from which defendant claimed to have received death threats from both inmates and guards. Defendant asked the court to permit him to make an offer of proof on the record or, alternatively, to have the court conduct an in camera inspection of evidence in his possession which he claimed supported his position, but the court refused. The trial court ruled, as a matter of law, that duress was not a defense to the taking of hostages and granted the prosecutor's motion.

Because defendant and defense counsel were disappointed with the trial court's refusal to allow defendant to present a duress defense, defense counsel expressly refused to actively participate in the trial. Defense counsel did not voir dire a single juror, did not make an opening statement, and did

not cross-examine a single prosecution witness. Defendant did not testify. In a brief closing statement, defense counsel explained only that, because the trial was so unfair, defendant and defense counsel would have no part in it.

Defendant argues that the trial court erred in granting the prosecution's motion in limine to exclude the defense of duress. We disagree.

Duress is not a defense to homicide, *People v Dittis,* 157 Mich App 38, 40; 403 NW2d 94 (1987), lv den 428 Mich 911 (1987). Further, we agree with the panels of this Court that have held that duress is not a defense to the crime of possession of a dangerous weapon by an inmate, MCL 800.283; MSA 28.1623. *People v Rau,* 174 Mich App 339, 342-343; 436 NW2d 409 (1989); *People v Crooks,* 151 Mich App 389, 390-391; 390 NW2d 250 (1986), lv den 426 Mich 870 (1986), but see *People v Blair,* 157 Mich App 43, 48-50; 403 NW2d 96 (1987), lv den 428 Mich 902 (1987).

In *Rau, supra,* p 342, disagreeing with *Blair, supra,* our Court noted:

> We are aware of this Court's decision in *People v Perry,* 145 Mich App 778; 377 NW2d 911 (1985), lv den 424 Mich 857 (1985). However, that decision turned on the issue of what constituted possession. *People v Blair,* 157 Mich App 43; 403 NW2d 96 (1987), also reached a contrary result on facts similar to those in the matter before us. We decline, however, to follow that panel's analysis. The *Blair* Court based its holding on *People v Luther,* 394 Mich 619; 232 NW2d 184 (1975), which allowed the defense of duress for the offense of prison escape. *As a rule, there is no threat to individuals' safety by an escape.* Moreover, duress has been specifically authorized by statute as a defense to prison escape. MCL 768.21b(4); MSA 28.1044(2)(4). The Legislature has not seen fit to

extend such a defense to the instant offense, and
we decline to do so. [Emphasis added.]

Moreover, we note that MCL 768.21b(4); MSA
28.1044(2)(4), which was enacted subsequent to and
incorporated the factors adopted in *Luther, supra,*
p 623, provides in part:

> In determining whether or not the defendant
> broke prison while under duress the jury or court
> may consider the following conditions if supported
> by competent evidence:
>
>          \*   \*   \*
>
> (e) *Whether force or violence was not used to-*
> *wards innocent persons in the prison break.* [Em-
> phasis added.]

The *Rau* Court also stated:

> On public policy grounds, we cannot sanction
> the possession of deadly weapons by inmates. To
> do so would invite an unwarranted threat to the
> safety of prison personnel and other inmates. In a
> prison setting there would be virtually no control
> over such weapons. To allow such would be to
> leave the door wide open for possession of life-
> threatening objects with later fabrication of the
> defense. The recent deaths of prison guards ade-
> quately demonstrate the folly of this approach. A
> ruling by this Court to extend the defense of
> duress to possession of weapons will in our opinion
> exacerbate a constant threat in a volatile situa-
> tion. Absent exceptional circumstances such as
> those referred to in *People v Crooks,* 151 Mich
> App 389; 390 NW2d 250 (1986), lv den 426 Mich
> 870 (1986), citing *Mungin v State,* 458 So 2d 293,
> 297 (Fla App, 1984), an inmate should not possess
> a weapon. [174 Mich App 342-343.]

In *Crooks, supra,* pp 390-391, our Court stated:

Defendant asks us to extend this defense [duress] to inmates carrying a concealed weapon. While we empathize with defendant's predicament, we cannot permit this defense to be used.

"To grant judicial sanction to the otherwise unlawful possession of a deadly weapon by prisoners, *whatever the reason* would undoubtedly result in murder, mayhem and utter chaos throughout our entire penal institutions, with which authorities would be unable to cope." [*Mungin v State,* 458 So 2d 293, 297 (Fla App, 1984). Emphasis in *Mungin.*]

We are aware that there are exceptional circumstances under which this defense could be raised; however no exceptional circumstances are present in the instant case.

As an example of "exceptional circumstances," the *Crooks* Court referenced by footnote the situation in *Mungin, supra,* stating:

In *Mungin v State,* 458 So 2d 293 (Fla App, 1984), the defendant inmate wrestled a weapon from his attacker and then utilized it for self-protection. This defendant inmate was then permitted to use duress as his defense for "the temporary possession of a weapon taken from the possession of a would-be aggressor when it is used to defend the attacked inmate against the imminent peril of death or serious bodily injury." *Id.,* p 297. [151 Mich App 391, n 1.]

Logical reasoning dictates that, if duress is unavailable as a matter of law in all but the most exceptional circumstances to the offense of possession of a dangerous weapon by an inmate, it is hardly available as a defense to an inmate, such as defendant, who takes innocent third parties hos-

tage at knifepoint. This situation is very much akin to that in *Dittis, supra,* where this Court disallowed duress as a defense to homicide. Though in this case defendant ultimately did not harm the hostages, he, nevertheless, threatened to inflict on innocent third parties the very harm he himself sought to avoid, and very likely would have done so had his demands not been met. Thus, we find no error in the trial court's ruling that the defense of duress was unavailable to defendant as a matter of law.

More troubling to us, however, is the conduct of defense counsel at trial. The record does not adequately explain to this Court why the trial court permitted defense counsel to act as he did or what input defendant had in his counsel's representation, or nonrepresentation, of his case. On the surface, it would appear from the transcripts that defense counsel completely abandoned his client's case following the trial court's adverse ruling on the duress defense. Such conduct not only would amount to ineffective assistance of counsel, but also would be in violation of the Michigan Rules of Professional Conduct, including, but not limited to, those rules governing competence, MRPC 1.1, scope of representation, MRPC 1.2, and diligence, MRPC 1.3. Complete refusal by counsel to participate in any way in the course and conduct of a client's trial will not be viewed or condoned by this Court as mere trial strategy.

We remand this case to the trial court for a full factual determination as to whether defendant received effective assistance of trial counsel. If the court finds that he did not, then the court shall order a new trial.

Affirmed in part, and remanded. We do not retain jurisdiction.