**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Lloyd Joseph VALCAREL, Appellant.**

Superior Court of Pennsylvania.

Submitted May 12, 2014.

Filed June 12, 2014.

Richard G. Settgast, Jr., Bellefonte, for appellant.

Daniel C. McKenrick, Assistant District Attorney, Bellefonte, for Commonwealth, appellee.

BEFORE: DONOHUE, WECHT, and STRASSBURGER *, JJ.

OPINION BY STRASSBURGER, J.:

Lloyd Joseph Valcarel (Appellant) appeals from his August 23, 2014 judgment of sentence of 9 to 18 months' imprisonment following his conviction for unlawfully possessing a weapon in prison, in violation of 18 Pa.C.S. § 5122(a)(2). Specifically, Appellant challenges the pretrial grant of the Commonwealth's motion *in limine* which precluded him from offering evidence in support of the defenses of justification or duress. After thorough review, we affirm.

On January 24, 2013, Appellant, an inmate at the State Correctional Institution at Rockview (SCI Rockview), was involved in a fight with another inmate. A corrections officer (CO) who detained Appellant after the fight observed Appellant drop onto the floor from his clothing a plastic knife, into the end of which a razor blade had been melted. Appellant's dropping the shank, wrapped in tissue paper, was also captured on surveillance video.

Appellant was charged with violating section 5122 of the Crimes Code which provides, in relevant part, as follows: "An inmate commits a misdemeanor of the first degree if he unlawfully procures, makes or otherwise provides himself with, or unlawfully has in his possession or under his control, any weapon, tool, implement or other thing which may be used for escape." 18 Pa.C.S. § 5122(a)(2).

* Retired Senior Judge assigned to the Superior Court.

Prior to trial, Appellant indicated his intention to offer a justification or duress defense to the charges. The Commonwealth filed a motion *in limine* seeking to preclude any evidence in support of such defenses. After a hearing, the trial court granted the Commonwealth's motion. Appellant proceeded to a bench trial before another judge and was convicted and sentenced as indicated above.

 Appellant timely filed a notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following question for this Court's review: "Did the trial court err in holding that [Appellant] was prohibited from using the defenses of justification, generally; duress; self-defense; and defense of others and prohibiting [Appellant] from presenting any evidence of these defenses[?]" Appellant's Brief at 5 (unnecessary capitalization omitted).

[A] motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to a ruling on a motion to suppress evidence, [therefore] our standard of review . . . is the same as that of a motion to suppress. The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion.

*Commonwealth v. Rosen*, 615 Pa. 305, 42 A.3d 988, 993 (2012) (internal citations and quotation marks omitted).

Appellant notes that the "right to self-preservation does not end at the gates of a prison." Appellant's Brief at 8. Appellant claims that he was entitled to resort to self-help to protect himself in prison, as he was "the target of a prison gang" and his "attempts to get help from the prison officials were ignored or punished[.]" *Id.* at 13. Accordingly, Appellant argues that he was entitled to offer evidence to support a defense that his possession of the prison shank was not unlawful.

Appellant's counsel summarized the testimony which Appellant wished to offer as follows.

When [Appellant] was transferred to SCI Rockview, he was put—he was held for a period of two weeks and was constantly being harassed by two inmates who were known to have sexually assaulted other inmates. They would physically, sexually harass [Appellant] on the cell block. These actions finally came to a head when these two inmates jumped [Appellant] and tried to pull him into a cell to rape him. [Appellant] was able to escape by making a scene so the CO and other inmates saw what was happening and intervened.

[Appellant] tried numerous times to speak with COs about this abuse. He specifically talked to CO Masters and Unit Manager Gensui. Rather than help him or move him, they would write him up as retaliation for the complaints he made about the sexual harassment. These retaliatory write ups by the COs led to hi[s] being confined to his cell as punishment and inadvertently ended the sexual assaults as he didn't have to walk past these two prison rapists on his way to his programs.

\* \* \*

Shortly after being on lockdown in his cell, [Appellant] was transferred to a new block. [Appellant's] new cellmate had a particular fondness for beating his cellmates with a lock in a sock. [Appellant] made a number of complaints to COs Besec, Lytle, Joe, Sergeant Rice, and the sergeant who worked the morning shift, and also his counselor, Ms. Carol. [Appellant's] complaints went ignored.

[Appellant] spent three weeks of his life with no sleep, watching his cellmate,

and afraid that he would be attacked while he was sleeping. At some points in the night, he would wake up and see his cellmate get out of bed, walk around the cell swinging the lock in sock waiting for [Appellant] to go to sleep.

[Appellant] was finally transferred to a cell with inmate Williams who is serving a life sentence. Inmate Williams is a member of the Fruit Muslims [1]—a leading member of the Fruit Muslims. The Fruit Muslims are different from other gangs in SCI Rockview because they are organized and operate with a military-like discipline. They practice Sharia Law against any non-members as punishment and in retaliation, the "eye for an eye justice." Inmate Williams and [Appellant] did not get along as cellmates. As a result of this disagreement, inmate Williams decided to make an example to show who was in charge.

Inmate Williams knew that [Appellant's] best friend at SCI Rockview was . . . Kaeyne Freedland. . . . Kaeyne Freedland was subsequently attacked and had his throat cut by a member of the Fruit Muslims. [Appellant] knew that this was a message from Williams about who was in charge of their cell. It was only after [Appellant's] best friend had his throat cut on orders from inmate Williams, [that he] decided to buy a shiv so that he could defend himself if any of the Fruit Muslims tried to attack him.

On the day that the shiv was found, [Appellant] had just been violently assaulted by Antwan Robinson. Although [Appellant] was attacked and he had a shiv on his person, he did not use the shiv against Antwan Robinson because he knew Mr. Robinson was not a member of the Fruit Muslims. The events of this testimony occurred over a two month period.

N.T. (Trial), 8/23/2013, at 31–34.

At the hearing on the motion *in limine,* the Commonwealth argued, and the trial court agreed, that Appellant could not raise justification or duress as a defense to the crime of possessing a weapon in prison. Specifically, with regard to the defense of justification, the trial court explained its reasoning as follows.

In the instant case, Appellant has been charged with a violation of 18 Pa. C.S. § 5122(a)(2), which provides "an inmate commits a misdemeanor of the first degree if he unlawfully procures, makes or otherwise provides himself with, or unlawfully has in his possession or under his control, any weapon, tool, implement or other thing which may be used for escape." The statute goes on to define a weapon as "any implement readily capable of lethal use," including any "knife, dagger, razor, or other cutting or stabbing implement or club, including any item which has been modified or adopted so that it can be used as a . . . knife, dagger, razor, or other cutting or stabbing implement or club." 18 Pa.C.S. [§ 5122(b)(2) ].

The legislative intent of this statute is clear. Inmates may not possess weapons while incarcerated. Introducing weapons into the prison population places the inmates and prison staff at risk. The harm or evil Appellant allegedly sought to avoid by possessing a weapon (being harmed by another inmate) is not greater than the conduct sought to be prevented by the law defining the offense (creating substantial risk of harm to himself, other inmates, and prison staff by introduction of [a] weap-

---

**1.** Appellant notes in his brief that "Fruit Muslims" refers to the Fruit of Islam. Appellant's Brief at 12. This group has been described as "the paramilitary wing of the Nation of Islam." *Heard v. Caruso,* 351 Fed.Appx. 1, 10 (6th Cir.2009).

on into the population). Therefore, Appellant cannot avail himself of this defense.

Trial Court Opinion, 10/8/2013, at 2. Regarding the defense of duress, the trial court offered the following explanation for its decision.

[Duress] is generally a defense to a crime if the actor is coerced to act by the use of, or threat to use, unlawful force against his person or the person of another, which a reasonable person in that same situation would have been unable to resist. As discussed above, Appellant is charged with a violation of ... possession of a weapon or implement for escape. Although the issue of duress as a defense to possessing a weapon or implement of escape appears to be an issue of first impression, the Pennsylvania Supreme Court *has* determined duress is not a defense to a charge of escape unless it involves an *immediate* threat of serious bodily injury, death, or forcible sexual attack. *Commonwealth v. Stanley* [498 Pa. 326], 446 A.2d 583 (Pa.1982).

The case at issue in the instant matter is not a situation in which Appellant was attacked and picked up an item which qualified as a weapon or implement of escape with which to defend himself. Argument at the hearing established it is the policy of the Department of Corrections to respond to an expression of concern by an inmate of a fear of danger from another inmate by performing an investigation to corroborate that threat. Should the threat be corroborated, the prison staff can then place the threatened prisoner in administrative custody for his or her protection. As there was no *immediate* threat of serious bodily injury, death, or forcible sexual attack, Appellant should have availed himself of the proper administrative procedures, rather than undertaking a self-help remedy which jeopardized his safety and the safety of other inmates and prison staff. *See id.* ([holding] self-help remedies which jeopardize the safety of citizens, prison officials, and orderly administration of prisons cannot be condoned[; Stanley] should have utilized the lawful avenues available to him to address his concerns regarding the conditions in prison, rather than attempting an escape). Duress is not a defense to possession of a weapon or implement for escape in this situation.

*Id.* at 2–3 (emphasis in original). Addressing Appellant's proposed trial defense of self-defense, the trial court opined as follows.

Self-defense is governed by 18 Pa. C.S.[§ 505], which provides that "the use of force upon or toward another person is justifiable when the actor believes such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by" another person in that moment. In the instant case, Appellant is not charged with a crime involving the use of force. Rather, Appellant is charged with possessing a weapon or implement of escape.

However, even if self-defense were a defense [to] the charge of possession of a weapon or implement of escape, this is not, as discussed above, a situation where Appellant picked up an item to defend himself in the middle of an attack and in which he would reasonably believe force is *"immediately* necessary" to protect himself. Appellant either manufactured the weapon (a plastic knife with a razor blade melted into the end) himself or acquired it from someone else ahead of the incident which led to his being charged. Any action taken by Appellant was not the type of action

contemplated in a case where a defendant may avail himself of the defense of self-defense.

*Id.* at 3–4 (emphasis in original).[2]

Considering the factual basis of Appellant's proposed defense in light of the case law, as was accurately summarized by the trial court, we hold that the trial court did not abuse its discretion in precluding Appellant from pursing a defense of justification, duress, or self-defense.

The only authority from this jurisdiction which Appellant cites in support of his argument is *Stanley,* referenced by the trial court as noted above. In that case, our Supreme Court considered whether Stanley was permitted to introduce evidence of the conditions of the prison in support of a duress defense to the charges of escape and possessing an instrument of escape. The Court noted that "jurisdictions which have recognized escape defenses have done so in cases which involve immediate threats of serious bodily injury, death, or forcible sexual attack." *Stanley,* 446 A.2d at 589 (citing *People v. Lovercamp,* 43 Cal.App.3d 823, 118 Cal.Rptr. 110 (1974)). Because Stanley did not claim such immediate threats, but rather complained of overcrowding and poor medical care, the Court held the defense inapplicable.

In the instant case, Appellant did claim a threat of serious injury or death. Assuming *arguendo* that Appellant is correct that "[w]hat is implicit in the *Stanley* Court's dicta is that [there] can exist situations where a prisoner has a valid duress defense if certain criteria [are] met[,]" Appellant's Brief at 11, we examine the criteria established in the *Lovercamp* case cited by the *Stanley* Court.

After examining the history of the offense of escape, the *Lovercamp* court held that "the defense of necessity to an escape charge is a viable defense." 43 Cal.App.3d at 831, 118 Cal.Rptr. at 115. However, it went on to note "before Lovercamp becomes a household word in prison circles and we are exposed to the spectacle of hordes of prisoners leaping over the walls screaming 'rape,' we hasten to add that the defense of necessity to an escape charge is extremely limited in its application." *Id.* Specifically, the court held that necessity is a defense only if all of the following conditions exist.

(1) The prisoner is faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future;

(2) There is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory;

(3) There is no time or opportunity to resort to the courts;

(4) There is no evidence of force or violence used towards prison personnel or other 'innocent' persons in the escape; and

(5) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

*Lovercamp,* 43 Cal.App.3d at 831–832, 118 Cal.Rptr. at 115 (footnote omitted).

---

**2.** While the Commonwealth's motion *in limine* and Appellant's question presented in this appeal additionally reference defense of others as a justification defense Appellant wished to raise at trial, Appellant did not raise at the hearing, and does not pursue on appeal, any argument related to that defense.

Furthermore, the factual basis for his defense, *supra,* does not reference any person, other than himself, whom Appellant sought to protect with the weapon in question. Accordingly, we do not consider the availability of defense of others as a defense to 18 Pa.C.S. § 5122.

Despite Appellant's protestations to the contrary, it is clear that he is unable to establish that all of these conditions were present. Appellant's proposed testimony does not establish that he faced a specific, immediate threat such that there was no time or opportunity to resort to the courts. Nor does it show that there was no time to make a complaint to prison authorities or that such complaints would have been futile. Although Appellant claims that he was punished for complaining about the initial threat he perceived when he was transferred to SCI Rockview, the complaint in fact resulted in his being protected. Appellant was kept from his would-be attackers and transferred to a new block. After complaining about his next cellmate, he was again transferred. There is no indication that Appellant ever informed anyone of his fear of the "Fruit Muslims" or that such complaints would have been futile. Accordingly, *Stanley* and *Lovercamp* entitle Appellant to no relief.

Appellant also cites cases from other jurisdictions which "permit a defendant to present evidence of a defense to an inmate not to possess a weapon" charge. Appellant's Brief at 15 (citing, *inter alia, People v. Blair,* 157 Mich.App. 43, 403 N.W.2d 96 (1987); *State v. Vandiver,* 757 S.W.2d 308 (Mo.App.1988); *Mungin v. State,* 458 So.2d 293 (Fla.Dist.Ct.App.1984)). The defense these cases recognize is as follows: "Where an unarmed prisoner is attacked by another prisoner who is carrying a weapon and the unarmed prisoner takes the weapon away from his aggressor, then the would-be victim will not be prosecuted for his temporary possession of the weapon which he has wrested from his attacker." *Vandiver,* 757 S.W.2d at 311–12 (citing *People v. Perry,* 145 Mich.App. 778, 377 N.W.2d 911 (1985); *Mungin, supra* ). As the trial court noted, that is simply not what happened in the instant case. Appellant was not convicted for possessing the weapon of a disarmed attacker; he procured the weapon in anticipation of an attack that might possibly happen at some unknown future time. None of the cases cited by Appellant entitles him to relief.

In sum, for all of the cogent reasons offered by the trial court, and because Appellant failed to establish that arming himself was the only way to protect himself from a specific, immediate threat, we conclude that the trial court did not abuse its discretion in granting the Commonwealth's motion in limine and precluding Appellant's justification/duress testimony.

Judgment of sentence affirmed.