**David Patrick LAKIN, Petitioner–
Appellee,**

v.

**Wayne STINE, Respondent–Appellant.**

No. 01–1671.

United States Court of Appeals,
Sixth Circuit.

June 12, 2003.

Before BATCHELDER and COLE, Circuit Judges, and GRAHAM,* District Judge.

GRAHAM, District Judge.

This is an appeal filed by Respondent–Appellant, Michigan Attorney General Wayne Stine, from a judgment entered in the United States District Court for the Eastern District of Michigan which conditionally granted a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by Petitioner–Appellee, David Patrick Lakin.

## I.  History of the Case

Petitioner was convicted in the Circuit Court of Jackson County, Michigan, on June 26, 1990, on one count of kidnapping, one count of prison escape, one count of assault of a prison employee, and one count of unlawfully driving away an automobile.  These charges stemmed from a prison escape by petitioner and four other inmates from the State Prison of Southern Michigan on January 26, 1990.  The five prisoners escaped through a storm drainage pipe into a field.  They were observed walking away from the prison by two corrections officers, Danny Norman and Sheila Duncan.  One of the inmates was wearing street clothes.  The others were dressed in prison uniforms, but carried clear plastic bags containing civilian clothing.

Norman and Duncan drove up in a state van and approached the five men to ask if they had been detailed to work in the area.  One inmate answered affirmatively, holding up a piece of paper.  The inmates then grabbed and subdued the officers, striking them several times.  The officers were handcuffed together and forced into the state van.  The five inmates also entered the van, and petitioner drove the van to various locations looking for another vehicle to commandeer.  He eventually turned onto a street which was blockaded by a sheriff's vehicle, and he was stopped at gunpoint by a sheriff's deputy.  The inmates exited the vehicle with their hands up and were taken into custody.

During the incident, Officer Duncan sustained broken blood vessels in one eye, a blow to the other eye, bruises, a split lip, a knot on her ear, an internal bruise on her kidney, and other injuries.  Officer Norman sustained a cut lip and knots on his head from being kicked by petitioner.

Prior to trial, petitioner filed a notice pursuant to M.C.L. § 768.21b(1) of his intent to assert the defense of duress to the escape charge.  Section 768.21b provides that duress may be a defense to the charge of breaking prison.  M.C.L. § 768.21b(1) requires the filing of a notice at least ten days prior to trial setting forth "specific information relative to the defense" and "the names of witnesses to be called in behalf of the defendant to establish that defense." § 768.21b(1).  Petitioner also stated in this notice that he intended to assert the defense of necessity.[1]

*The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1.  Duress and necessity are two distinct branches of the compulsion defense.  Under Michigan law, the source of compulsion for duress is the threatened conduct of another

Petitioner's original notice was a *pro se* filing dated March 19, 1990. He later filed an amended notice on June 7, 1990. In this amended notice, petitioner alleged generally that he was forced to flee the institution to avoid being assaulted or murdered. He further alleged that high-ranking prison officials were engaged in a criminal enterprise which included placing poison in his food, and that prison officials withheld medical treatment for symptoms which resulted from the ingestion of poisons. He listed sixty-one witnesses who would allegedly testify concerning assaults or attempted murder involving inmates and the presence of toxic chemicals and other environmental contaminants in the food and water supply at the institution. The prosecution filed a motion to strike the compulsion defenses.

On June 18, 1990, petitioner moved for the appointment of new counsel. When the court denied this request, petitioner elected to represent himself for the remainder of the proceedings.

On June 18, 1990, the trial court held an evidentiary hearing to determine whether the compulsion defenses, including the defense of duress under § 768.21b, were available.[2] The prosecution argued that under *People v. Travis*, 182 Mich.App. 389, 451 N.W.2d 641 (1990),[3] the defenses were not available when hostages were taken or violence was used during the escape.

The prosecution presented the testimony of Officers Duncan and Norman, who testified that they were assaulted and forced into the state vehicle by the defendants. Petitioner called Sergeant Royce Alston, the investigating officer on the case, to testify concerning various incident reports which contained witness statements. The defendants then indicated that they wished to call additional witnesses, and the hearing was recessed until June 20, 1990.

At the hearing on June 20, 1990, petitioner called Officer Dennis VanDusen, a prison employee. Mr. VanDusen testified

---

human being, whereas the source of compulsion for necessity is the presence of natural physical forces. *People v. Hocquard*, 64 Mich. App. 331, 337 n. 3, 236 N.W.2d 72 (1975).

**2.** M.C.L. § 768.21b(4) provides:

(4) In determining whether or not the defendant broke prison while under duress the jury or court may consider the following conditions if supported by competent evidence:
(a) Whether the defendant was faced with a specific threat of death, forcible sexual attack or substantial bodily injury in the immediate future.
(b) Whether there was insufficient time for a complaint to the authorities.
(c) Whether there was a history of complaints by the defendant which failed to provide relief.
(4) Whether there was insufficient time or opportunity to resort to the courts.
(e) Whether force or violence was not used towards innocent persons in the prison break.

(f) Whether the defendant immediately reported to the proper authorities upon reaching a position of safety from the immediate threat.

**3.** Under Michigan law, duress may be a defense to the offense of prison escape, because, "[a]s a rule, there is no threat to individuals' safety by an escape." *People v. Rau*, 174 Mich.App. 339, 342, 436 N.W.2d 409 (1989). However, the court in *Rau* further stated, "On public policy grounds, we cannot sanction the possession of deadly weapons by inmates." *Id.* In *Travis*, the court, citing *Rau*, held that a prisoner charged with taking a hostage at knifepoint could not assert the defense of duress as a matter of law on public policy grounds. *Travis*, 182 Mich.App. at 392–95, 451 N.W.2d 641. Although the defendant in *Travis* was not charged with escape, the court noted by way of analogy that under § 768.21b(4), the use of force or violence towards innocent persons during a prison break was a factor in determining whether duress was available as a defense to escape. *Id.*, 182 Mich.App. at 393, 451 N.W.2d 641.

that he observed five or six people walking by a fence approximately 250 feet away. He later saw persons "scurrying around" and getting into a state vehicle which was on a road approximately 500 to 600 yards or half a mile from where he was standing. An object he could not identify fell from the vehicle as it was leaving, and the vehicle stopped briefly while someone got out of the vehicle to retrieve it. He stated that he did not see an assault, but could not say that an assault did not occur. After this testimony, petitioner and the other defendants indicated that they did not wish to call any additional witnesses.

In rebuttal, the prosecution called Paul Lenardson, a prison maintenance employee, who had also been identified by the defendants as a potential witness. Lenardson observed a state van approaching five persons who were walking across a field. At that time, Lenardson was standing with VanDusen about a quarter of a mile away from the road. He observed the five persons approach the van. A few minutes later, he saw someone fall from the back of the van. Several people ran to the back of the van, picked the person up and pushed the person into the van.

Relying on *Travis* and other authorities, the trial court concluded that petitioner's compulsion defenses were not available as a matter of law because hostages were taken during the escape. The trial court indicated that this ruling applied to all counts. The trial court permitted the parties to argue any objections to this and other rulings on the record, and the case then proceeded to a jury trial. Petitioner was convicted on one count of kidnapping, one count of prison escape, one count of assault of a prison employee, and one count of unlawfully driving away an automobile.

Petitioner was sentenced on August 29, 1990. He pursued a direct appeal, and on June 14, 1993, the Michigan Court of Appeals affirmed his convictions.[4] On November 30, 1993, the Michigan Supreme Court denied petitioner's application for leave to appeal.

On May 16, 1996, petitioner filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Michigan. In this petition, petitioner alleged: 1) that he was denied his right to the effective assistance of counsel; 2) that he was denied a fair and impartial trial when the trial court prevented him from presenting a duress and necessity defense; 3) that he was denied a fair trial because of a court rule limiting the number of peremptory challenges to seven; 4) that he was denied a fair trial due to the trial court's refusal to charge the jury on lesser included offenses; and 5) that he was denied a fair trial because he was shackled during the trial.

In a report and recommendation filed on June 26, 1998, the magistrate judge recommended that the petition be denied. On April 8, 1999, the district court rendered an opinion rejecting the report and recommendation and conditionally granting the petition on the first ground raised, that of ineffective assistance of counsel. *See Lakin v. Stine*, 44 F.Supp.2d 897 (E.D.Mich. 1999). Respondent pursued an appeal from the judgment of the district court. In a decision filed on July 13, 2000, a panel of this court reversed the district court's grant of the writ, holding that the trial

---

4. *People v. Lakin*, No. 132531, LC No. 90 053769 FC (Mich.App. June 14, 1993). The court of appeals did not specifically discuss petitioner's arguments concerning the duress defense, but did state at the conclusion of the opinion: "We have carefully considered the remaining issues raised by defendants. However, we conclude that they require neither reversal nor discussion." Opinion, p. 3.

court's denial of petitioner's motion for new counsel did not deprive petitioner of his Sixth Amendment right to counsel, and that petitioner voluntarily waived his right to counsel in choosing to represent himself. *See Lakin v. Stine,* 229 F.3d 1152, 2000 WL 1256900 (6th Cir.2000) (unreported).

On remand, the district court addressed the issue of petitioner's duress and necessity defenses. In an opinion filed on April 24, 2001, *see Lakin v. Stine,* 151 F.Supp.2d 824 (E.D.Mich.2001), the district court decided that the Michigan trial court's interpretation of *Travis* which barred the defenses of duress and necessity in petitioner's case was erroneous. The district court decided that petitioner had been denied his federal constitutional right to present his defenses. The district court, relying on *Barker v. Yukins,* 199 F.3d 867 (6th Cir.1999), further concluded that a harmless error analysis was not appropriate in this case, since only the jury could weigh the merits of petitioner's duress and necessity defenses. The district court ordered that the writ be granted as to all counts of conviction on this claim unless the state afforded petitioner a new trial within ninety days. The district court did not address the remaining three issues advanced in the habeas petition. On April 26, 2001, judgment was entered in favor of the petitioner, and on April 30, 2001, respondent filed a notice of appeal from this judgment.

## II. Standard of Review

In a habeas action filed pursuant to 28 U.S.C. § 2254, this court reviews *de novo* the legal conclusions involved in the district court's decision to deny the writ, and reviews for clear error its findings of fact. *See Lucas v. O'Dea,* 179 F.3d 412, 416 (6th Cir.1999). The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective prior to the filing of the instant petition, apply to this case. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a writ of habeas corpus shall not issue unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). The provisions of § 2254(d)(1) govern the review of legal error, whereas claims of factual error are subjected to the standard enunciated in § 2254(d)(2). *Weaver v. Bowersox,* 241 F.3d 1024, 1029 (8th Cir. 2001).

Under § 2254(d)(1), a state court decision is "contrary to" Supreme Court precedent if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision involves an unreasonable application of Supreme Court precedent if the state court identifies the correct legal principle from the decisions of the Supreme Court but unreasonably applies that principle to the facts of the petitioner's case. *Id.*

A federal habeas court may not find a state adjudication to be "unreasonable" simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.Ct. 1495. Rather, a state court's application of federal law is

unreasonable "only if reasonable jurists would find it so arbitrary, unsupported or offensive to existing precedent as to fall outside the realm of plausible credible outcomes." *Barker*, 199 F.3d at 872.

Claims of error in making factual determinations are addressed under § 2254(d)(2). In addition, 28 U.S.C. § 2254(e)(1) provides that the findings of fact of a state court are presumed to be correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.

### III.   Merits of Petitioner's Claim

■ Respondent first argues that the district court erred in substituting its judgment for that of the Michigan trial court on the issue of whether the defenses of duress and necessity could be asserted by petitioner under Michigan law.

Petitioner argued before the Michigan trial court that the issue of whether hostages were taken during the escape was not a preclusive factor, but rather one of several factors under § 768.21b to be presented to the jury in deciding whether the defense was appropriate. The trial court, relying on *Travis* and other authorities, decided that the defenses of duress and necessity were not available as a matter of law if hostages were taken or force was used against prison employees. *See also Hocquard*, 64 Mich.App. at 337–338, 236 N.W.2d 72 (defense of necessity in prison escape context requires that there be no evidence of force or violence used towards prison personnel or other innocent persons in the escape).

The district court concluded that the defense of duress was available to petitioner under Michigan law, and that he should

have been permitted to present this defense. The district court noted that the defense of duress is made applicable to the crime of prison break by M.C.L. § 768.21b. The district court found that *Travis* was not applicable because that case involved the holding of hostages inside the prison, not a prison break. The district court concluded that the Michigan trial court's interpretation of Michigan law was incorrect, and that petitioner should have been permitted to present evidence bearing on his defenses.[5]

The Due Process Clause guarantees criminal defendants the right to be afforded a meaningful opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). However, states may place reasonable limitations on this right. *See, e.g., United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998)(defendant's right to present evidence in his defense subject to reasonable restrictions which the states may impose). Due process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes. *See Apprendi v. New Jersey*, 530 U.S. 466, 484–87, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84–86, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). The circumstances under which the defenses of duress or necessity may be asserted is a question of state law.

It is well established that "it is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas re-

---

**5.** The district court did not specifically explain why petitioner was also entitled to assert the defense of necessity, or why his duress defense should also apply to the offenses of kidnapping, assault of a prison employee and unauthorized driving away of a motor vehicle.

view, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), "state courts are the ultimate expositors of state law[.]"

> Principles of comity and finality equally command that a habeas court can not revise a state court's interpretation of state law, and in particular, instruct that a habeas court accept the interpretation of state law by the highest state court on a petitioner's direct appeal.

*Gall v. Parker*, 231 F.3d 265, 303 (6th Cir.2000) (citations omitted).

Petitioner contested the Michigan trial court's ruling on direct appeal, and the Michigan Court of Appeals denied the assignment of error without discussion. Leave to appeal was denied by the Michigan Supreme Court. Thus, the ruling of the trial court stands as the controlling statement of Michigan law. Even if we assume, without deciding the issue, that the Michigan trial court's ruling was incorrect, this does not provide a valid basis for the issuance of the writ. Since habeas relief will not lie for errors of state law, the district court erred in granting the writ on this ground. The relevant question in a habeas action is not whether the trial court misinterpreted state law, but whether petitioner has demonstrated that the state court's ruling was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(1) and (2).

■ Respondent argues that the district court erred in holding that petitioner should have been permitted to present evidence bearing on his defenses and that the jury should have been instructed on those defenses, even though petitioner did not make a preliminary showing of a legally cognizable defense. Respondent also argues that the district court erred in concluding that a harmless error analysis was inappropriate.

A defendant "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). However, a court need not instruct on the defense of duress or justification if the evidence is insufficient as a matter of law to support the defense. *See United States v. Bailey*, 444 U.S. 394, 412–15, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980).

No due process violation occurs from the failure to give an instruction on a defense where there was insufficient evidence as a matter of law to support such a charge. *See Neuman v. Rivers*, 125 F.3d 315, 323–24 (6th Cir.1997)(denial of writ upheld where district court properly found that there was insufficient evidence to warrant instructions on self defense and intoxication); *United States v. Sarno*, 24 F.3d 618, 621 (4th Cir.1994)(citing *Bailey* in holding that where evidence insufficient as a matter of law to support duress defense, no due process violation results from trial court's refusal to instruct jury on defense).

The Supreme Court has also upheld the requirement of a threshold showing by the defendant on the elements of an affirmative defense as being a valid prerequisite to the presentation of evidence bearing on a defense. In *Bailey*, the Court considered the duress defense raised in the context of a prosecution for escape from federal custody. The Court noted that the jury heard "evidence of every unpleasant

aspect of prison life from the amount of garbage on the cellblock floor, to the meal schedule, to the number of times the inmates were allowed to shower." *Id.,* 444 U.S. at 417, 100 S.Ct. 624. The Court went on to state that subjecting the jury "to this potpourri even though a critical element of the proffered defenses was concededly absent ... would convert every trial [for escape] into a hearing on the current state of the federal penal system." *Id.* The Court held that where "an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *Id.* at 416, 100 S.Ct. 624.

If a petitioner fails to meet his burden of producing evidence sufficient to support a defense, then there are no grounds for relief under § 2254(d)(2). *See Mitzel v. Tate,* 267 F.3d 524, 537 (6th Cir.2001)("*Mathews* does not control if we are given no basis upon which to overcome the state court's findings that there was *not* sufficient evidence to support the defendant's theory[.]")

Under Michigan law, a defendant has the initial burden of producing some evidence from which the jury could conclude that the essential elements of duress or other justification were present. *People v. Lemons,* 454 Mich. 234, 246, 562 N.W.2d 447 (1997). In other words, a defendant has the burden of producing a prima facie defense of duress. *Id.,* 454 Mich. at 248–49, 562 N.W.2d 447. Where a defendant fails to meet this burden, the trial court does not err in precluding the defendant from introducing evidence which places the issue of duress before the jury. *See People v. Ramsdell,* 230 Mich.App. 386, 401, 585 N.W.2d 1 (1998). It is only when a defendant successfully raises the defense

that the prosecution has the burden of proving beyond a reasonable doubt that the defendant did not act under duress. *See People v. Terry,* 224 Mich.App. 447, 453–54, 569 N.W.2d 641 (1997).

The defense of duress under Michigan law requires proof that: (1) the threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm; (2) the conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant; (3) the fear or duress was operating upon the mind of the defendant at the time of the alleged act; and (4) the defendant committed the act to avoid the threatened harm. *Lemons,* 454 Mich. at 247, 562 N.W.2d 447. The threatening conduct or act of compulsion must be present, imminent, and impending, that is, a threat of future injury is not enough. *Id.* The duress defense may be forfeited if the defendant fails to terminate his conduct as soon as the claimed duress has lost its coercive force. *Id.,* 454 Mich. at 247 n. 18, 562 N.W.2d 447. Finally, the Michigan courts in this case imposed the additional requirement, applicable in cases of prison escape and related offenses, that no hostages be taken and that no physical harm be inflicted on prison personnel.

The notice of compulsion defenses filed by petitioner lists witnesses who would allegedly testify concerning assaults or murder attempts upon the defendants or other inmates in the prison yard or in the cell blocks. However, the notice provides no information as to when these alleged assaults occurred. There is no evidence proffered in the record which indicates that an assault upon petitioner was imminent at the time of his escape. There is also no evidence explaining why petitioner did not surrender himself to Officers Duncan and Norman when he was safely outside the prison and no longer subject to

the risk of assault by other inmates. The evidence proffered in the notice also does not explain why it was necessary to kidnap and assault Officers Norman and Duncan and to drive away in their vehicle in order to avoid the alleged threat of assault by other inmates inside the prison. Petitioner's notice of proposed testimony does not satisfy petitioner's burden of producing some evidence sufficient to satisfy each element of the duress defense.

The elements of the defense of necessity in the context of prison escape are: (1) the compulsion must be present, imminent and impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done; a threat of future injury is not enough; (2) there is no time for a complaint to the authorities or there exists a history of futile complaints which make any result from such complaints illusory; (3) there is no time or opportunity to resort to the courts; (4) there is no evidence of force or violence used towards prison personnel or other innocent persons in the escape; and (5) the prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat. *Hocquard,* 64 Mich. App. at 337–38, 236 N.W.2d 72. The defense of necessity in the prison escape context has been limited to cases in which officials deny an inmate medical care. It has not been extended to assaultive crimes. *People v. Plair,* No. 210566 (unreported), 1999 WL 33433559 (Mich.App. Oct.29, 1999).

■ The notice filed by petitioner lists several witnesses who would allegedly tes-

tify to the presence of toxic sludge at the prison or the effects of illegal chemical dumping on the food and water chain at the prison. However, these statements also contain no indication of any time frame when these problems allegedly occurred. Although the notice lists inmates who would allegedly testify that their complaints to prison officials were futile, there is no information indicating that there was no time or opportunity for petitioner to resort to the courts. In fact, the notice identifies other inmates who would testify concerning their federal law suits concerning the alleged toxic contamination at the prison. There is no evidence that petitioner reported to the proper authorities when he achieved a position away from the institution. The notice filed by petitioner fails to show that he could have produced evidence on each element of the necessity defense sufficient to create an issue for the jury.[6]

■ The trial court held an evidentiary hearing on the issue of whether hostages were taken or whether harm was inflicted on prison employees during the escape. At the pretrial hearing, both the prosecution and petitioner were permitted to present testimony on these issues. The procedure employed by the trial court favored petitioner, since the court required the prosecution to produce evidence sufficient to prove that hostages were taken, rather than requiring petitioner to prove that hostages were not taken. The testimony presented by the prosecution was sufficient to prove that hostages were taken and that physical harm was inflicted on prison per-

---

**6.** We disagree with the dissent's observation that this notice was sufficient to meet petitioner's burden of coming forward with colorable evidence of each element of the compulsion defenses. Under the trial court's ruling, the lack of hostage-taking or the infliction of physical harm on prison employees was also

an essential element of petitioner's compulsion defenses under Michigan law. The notice contains no evidence refuting the state's allegations that hostages were taken and that physical harm was inflicted on prison employees during the course of petitioner's escape.

sonnel during the escape. Petitioner presented the testimony of witnesses who were standing at least a quarter of a mile away from the scene. Even if the testimony presented by petitioner is accepted as true, as a matter of law it was not sufficient to permit a jury to conclude that hostages were not taken or that no physical harm was inflicted on prison employees.[7]

The trial court was authorized under state and federal law to determine whether sufficient evidence had been proffered to permit petitioner to present evidence relating to the compulsion defenses to the jury. *See United States v. Jankowski,* 194 F.3d 878, 882 (8th Cir.1999)(whether there is sufficient evidence to charge the jury on duress defense is a question of law); *United States v. Charmley,* 764 F.2d 675, 676 (9th Cir.1985)(same). Under *Bailey,* it is permissible for the trial court to make the initial determination of whether the defendant's proffered evidence, accepted as true, is sufficient to support each element of the proposed defense. However, even assuming that the trial court erred in not submitting the hostage issue to the jury, petitioner was not deprived of a jury determination on the issue of hostage taking or use of force against prison personnel. The jury, employing the reasonable doubt standard, later convicted petitioner of the offenses of kidnapping, assault on a prison employee, and unlawfully driving away an automobile. These offenses involved the same conduct relied on by the trial court

to bar the duress and necessity defenses in this case.

Petitioner proffered no other evidence concerning his proposed duress and necessity defenses. While he claims that he was prohibited by the court from introducing evidence bearing on the defenses of duress and necessity, petitioner and the other defendants were given ample opportunity after the trial court's ruling to proffer their objections or any proposed testimony bearing on the compulsion defenses. In fact, at least one of the defendants did refer in general to the duress and necessity defenses during these arguments. Despite this opportunity, none of the defendants gave a proffer sufficient to address each of the elements of these defenses.

The district court concluded that petitioner was deprived of due process based on a record which shows that petitioner did not meet his initial burden of proffering evidence on each element of his defenses. Since petitioner did not make a prima facie showing on his compulsion defenses, he has not shown that he was unconstitutionally deprived of his right to present a defense.

The opinion of the district court cites *Barker v. Yukins* for the proposition that a harmless error analysis was inappropriate in this case. In *Barker,* this court held that the failure to give an instruction on self defense was not harmless error where the record included sufficient evidence which, if believed by a jury, could have supported a finding of self defense. *Id.* at

---

7. The dissent states that the "central question in this case is whether the Michigan trial court's refusal to allow Petitioner to present any evidence whatsoever in support of a duress or necessity defense" violated his due process rights. However, the record shows that petitioner was given the opportunity to present evidence bearing on the lack of hostage-taking and physical harm, which the trial court determined, as a matter of state law, to

be essential elements of the compulsion defenses. Despite this opportunity, petitioner failed to meet his burden of proffering evidence sufficient to demonstrate the existence of a jury issue on these essential elements. Thus, the trial court was not required under the Constitution to permit petitioner to offer evidence in support of the compulsion defenses at trial. *See Bailey,* 444 U.S. at 412–15, 100 S.Ct. 624.

874, 876. The *Barker* court noted that the Michigan Supreme Court, in finding that the failure to instruct on self defense was harmless error, impermissibly weighed the evidence. *Id.* at 874.

The district court erred in concluding that *Barker* was applicable in this case. There is no indication that the trial court engaged in the improper weighing of evidence in determining whether to permit evidence or a jury instruction bearing on the compulsion defenses. Rather, the trial court determined as a matter of law that petitioner had not met his burden of proffering sufficient evidence on an essential element of his compulsion defenses, specifically, that hostages were not taken or that physical harm was not inflicted on prison personnel during the escape. Further, unlike *Barker*, the record in this case does not show that petitioner could have produced evidence which, if believed by the jury, was sufficient to establish each element of his compulsion defenses. Petitioner failed to proffer a prima facie case on other essential elements of those defenses, and he would not have been entitled to present evidence to the jury or to receive a jury instruction on the compulsion defenses in any event. Thus, even assuming that the trial court erred in concluding that the absence of hostage taking was an element of the compulsion defenses under Michigan law, that error could not be considered prejudicial in this case.

Respondent also argues that the district court erred in granting the writ on the charges of kidnapping, assault and unlawfully driving away a motor vehicle, since there was no showing that duress or necessity would be recognized as a defense to those charges under Michigan law. Petitioner has cited no Michigan authority specifically holding that the defenses of duress and necessity could be asserted in a case involving those offenses. As noted above, at least one Michigan court has held that the defense of necessity would not be extended to assaultive crimes. However, even assuming that Michigan law would permit raising the defenses of duress and necessity against those three charges in an appropriate case, petitioner failed to sustain his burden of proffering evidence sufficient to satisfy each element of the compulsion defenses, and therefore was not entitled to assert duress or compulsion as a defense to the three other charges.

Petitioner has not established that the ruling of the trial court, which denied him the opportunity to present evidence bearing on his compulsion defenses to the jury and precluded a jury instruction on those defenses, deprived him of due process of law or his constitutional right to present a defense. After giving petitioner the opportunity to present evidence bearing on whether no taking of hostages or physical harm occurred, an essential element of the compulsion defenses under Michigan law, the trial court determined that petitioner had no evidence to present which would satisfy this essential element. In light of this determination, and based on the trial court's interpretation of Michigan law, petitioner had no viable defense of duress or necessity to present to the jury. The trial court's decision was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. We reverse the district court's grant of habeas relief based on the denial of the right to present the duress and necessity defenses.

## IV. Conclusion

For the foregoing reasons, we REVERSE the district court's conditional grant of a writ of habeas corpus for petitioner, and REMAND for further proceed-

ings on the remaining claims advanced in the petition. We note that this is the second appeal from a single habeas petition. Upon remand, the district court should address all three of the remaining claims in a single opinion to avoid further multiple appeals.

COLE, Circuit Judge, dissenting.

I agree with the majority insofar as it concludes that the issue of whether, as a matter of state law, the Michigan trial court properly precluded Lakin's proposed duress defense is not cognizable on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). However, this is not the question that this Court is being asked to decide. The central question presented in this case is whether the Michigan trial court's refusal to allow Petitioner to present any evidence whatsoever in support of a duress or necessity defense was "contrary to" or an "unreasonable application of" the clearly established Supreme Court precedent guaranteeing a criminal defendant a meaningful opportunity to present a complete defense. The focus of our inquiry, therefore, must be whether this refusal denied Petitioner a fundamentally fair trial. I would hold that it did.

"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998) (citations omitted). Although broad, this latitude is not boundless. By omitting any significant discussion of the constitutional right at issue, the majority fails to properly acknowledge the extent to which the broad latitude of the States to create and enforce evidentiary rules is limited by the Constitution.

Federal courts must examine the application of a state's evidentiary rules through the lens of the Constitution. Dogged deference to the application of the evidentiary rules of the States renders the guarantees of the Constitution illusory. Instead, mindful of the significant deference due to state evidentiary determinations, federal courts must act with open eyes toward the possibility that the state rule or its application in a particular case might infringe upon the guarantees of the federal Constitution. This dual obligation is illustrated by the fact that in the same breath that the Supreme Court uttered: "We have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted," the Court also held that a State's blanket exclusion of evidence relating to the credibility of the defendant's confession—an issue fundamental to his defense—deprived the defendant of a fair trial in violation of the Constitution. *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). Here, we are duty-bound to review whether the State, in implementing its evidentiary and procedural rules, has contravened the dictates of the federal Constitution.

It has long been established that, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment ... or in the Compulsory Process or Confrontation clauses of the Sixth Amendment ..., the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane*, 476 U.S. at 690, 106 S.Ct. 2142; *see California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

We must look at the extent to which the Michigan trial court's application of state law regarding the duress defense rendered Petitioner's criminal trial so fundamentally unfair as to deprive Petitioner of his constitutional rights. *See Miller v. Francis*, 269 F.3d 609, 621 (6th Cir.2001) (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)); *Lott v. Coyle*, 261 F.3d 594, 607 n. 6 (6th Cir.2001).

From the Supreme Court's case law analyzing the contours of a criminal defendant's constitutional right to present a complete defense, I would cull two important principles. First, the exclusion of evidence will be unconstitutional under this guarantee where the exclusion "undermined fundamental elements of the defense." *Scheffer*, 523 U.S. at 315, 118 S.Ct. 1261; *see, e.g., Crane*, 476 U.S. at 686–87, 689, 106 S.Ct. 2142 (finding exclusion of evidence relating to circumstances of a confession unconstitutional where the "defendant's case ... st[oo]d or f[e]ll on his ability to convince the jury that the manner in which the confession was obtained casts doubt on its credibility"). Second, the guarantee includes an inherent right to present defense witnesses that are necessary to the defendant's case. *See Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *see, e.g., Rock v. Arkansas*, 483 U.S. 44, 46–49, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (holding state rule barring hypnotically refreshed testimony violated Constitution where it rendered the only eyewitness unable to testify to whether the killing was accidental); *Washington v. Texas*, 388 U.S. 14, 16–17, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)

(finding state statute prohibiting co-defendants from testifying on behalf of each other violated the Constitution where it precluded accomplice's testimony that he committed the crime). Thus, where a defendant is permitted to present some evidence–albeit not as much evidence as he or she would have liked–on an important theory of the defense, the Constitution is satisfied so long as the evidence presented is sufficient to alert the jury to the defense's theory and, if the jury finds the evidence credible, to permit the jury to find for the defendant. *See Boggs v. Collins*, 226 F.3d 728 (6th Cir.2000).

The majority discusses at length that Petitioner did not have sufficient evidence to establish his duress and necessity defenses. However, the record belies the majority's conclusion. Petitioner, in compliance with state law, provided timely notice of these defenses. Under Michigan law, Petitioner's notice was sufficient to meet his burden of coming forward with colorable evidence of each of the statutory elements of the defense. *See People v. Sekoian*, 169 Mich.App. 609, 426 N.W.2d 412, 414 (1988); *see also* MICH. COMP. LAWS § 768.21b(1), (4) (2000); *People v. Mendoza*, 108 Mich.App. 733, 310 N.W.2d 860, 863 (1981) (explaining that it is not necessary that each statutory factor be established in order for the trier of fact to consider the defense). Petitioner was subsequently barred by the trial court at every pass, in the June 18 and 20, 1990 evidentiary hearings and during and after trial, from presenting evidence of his duress and necessity claims.[8]

---

8. At the June 18 and 20 hearings, Petitioner and his co-defendants argued that Michigan law did not preclude a duress defense simply because hostages were taken and explained the basis of their defense during argument, but did not present any evidence on the elements of the duress claim at the hearing.

This was because the trial court specifically precluded the presentation of this type of evidence stating, "Well, I really don't intend to get into that at this time." After the trial court ruled that the duress defense was unavailable, the defendants requested a continuance because "the Court's ruling today on the

Thus, the decision to exclude all evidence relating to Petitioner's duress and necessity defenses trampled his right to present a defense by undermining all elements of the defense and prohibiting any witness who could establish the defense from testifying. Petitioner's entire defense to the escape charge was that he acted under duress and necessity. Unlike *Boggs*, where the defendant was denied the ability to present one type of evidence in support of his defense theory, but was able to present the theory to the jury through other types of evidence, here, Petitioner's defense theory never reached the jury at all. Petitioner's proffered evidence, which included numerous witnesses who would testify concerning attempted assaults or murders of the defendant as well as other witnesses who would testify about contaminants in the prison water system and food, could conceivably be highly probative of Petitioner's duress and necessity defenses. Like the defendants in *Chambers* and *Crane*, Petitioner faced a complete bar to the presentation of the essential theories of his defense, duress and necessity. Where a defendant is permitted to present some evidence, although not all the evidence he or she would have liked, his constitutional rights may not be infringed. Where a court arbitrarily or disproportionately refuses to permit any evidence of an essential defense theory, the Constitution has been violated.

The Michigan trial court employed a blanket rule rather than an evidentiary restriction. The application of this blanket rule in this case was arbitrary and disproportionate. As applied, this rule does not further the interests that this type of evidentiary rule is designed to safeguard. Such rules are intended to shield the jury from information that it would not be proper for them to consider in deciding the case. Michigan could have permissibly prevented Petitioner from introducing evidence where that evidence, even if accepted as credible by the jury, could not establish the defense. However, as noted above, the trial court never permitted Petitioner to make a proffer regarding the sufficiency of the evidence. As a result, the jury was prevented from judging the credibility of the defense at all. Although Michigan could have permissibly limited the presentation of Petitioner's defense, for example, by setting requirements for how the defense is to be noticed or presented and what evidence may be used to support the defense, it does not further the interests of fairness and justice to absolutely bar constitutionally sufficient evidence of the defendant's only defense theory from reaching the jury. Thus, I would find that the trial court's decision to absolutely bar all evidence of Petitioner's sole defenses denied Petitioner a fundamentally fair trial.

---

defense duress [sic] kind of put us in a heck of a pickle." This request was promptly denied. The defendants continued to object on the grounds that they were unable to present their defense citing the Sixth Amendment and Due Process Clause as guaranteeing a right to present a defense. The trial court's only response was: "You're [sic] rights are protected." The defendants also moved for a directed verdict at the conclusion of the government's case on the same ground, again citing the Sixth Amendment and Due Process Clause. The trial court denied the motion without elaboration.