J-A23006-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANTHONY HARVEY, | : | |
| | : | |
| Appellant | : | No. 1192 WDA 2013 |

Appeal from the Judgment of Sentence July 3, 2013,
Court of Common Pleas, Cambria County,
Criminal Division at No. CP-11-CR-0000167-2012

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY DONOHUE, J.:           **FILED SEPTEMBER 19, 2014**

Anthony Harvey ("Harvey") appeals from the July 3, 2013 judgment of sentence entered by the Cambria County Court of Common Pleas for his involvement in the shooting death of J-Quan Lewis ("Lewis" or "the victim"). We affirm.

The trial court summarized the facts adduced at the joint trial held for Harvey and his co-defendant, Marquis Neal ("Neal"), as follows:

> [A]t approximately 11 p.m. on September 30, 2011[,] Harvey and Lewis were drinking at Edder's Den bar in the Oakhurst section of Johnstown. Harvey and Lewis got into an argument at the bar and were told to 'take it outside.' The pair, along with other patrons, left the bar and a fight ensued outside the building with Lewis getting the better of Harvey. Neal arrived during the fight and along with others[,] broke up the fight. Neal assisted the beaten Harvey into a minivan and the two left the bar.

The following morning Neal awoke at approximately 10 a.m. took two Percocet pills and one Xanax pill, none of which were prescribed to him, and drank approximately one-half of a 750ml bottle of vodka. He then left the apartment he was staying at in the Oakhurst Homes and went in search of marijuana. He made several stops at various apartments in the Oakhurst Homes but was unable to secure any drugs.

At approximately 2 p.m.[,] while Neal was walking through the Oakhurst Homes he saw Lewis and Hakeem Horton (Horton) walking towards him. As they approached[,] Neal asked Lewis if they were [alright] from the night before and if there were any hard feelings. Lewis either said 'no we aren't' and attempted to shoulder past Neal or simply attempted to shoulder past him[,] at which point Neal drew a handgun from his windbreaker and fired at Lewis striking him in the upper right arm with the round then entering and eventually exiting Lewis' chest.

Lewis turned to run and Neal pursued him firing several more shots, one of which struck Lewis in the back, passed through his heart, and exited through his chest. At this point Lewis fell and Neal walked up to his prone body and rolled him over. Lewis said 'please no' at which time Neal fired again with the third round entering Lewis' head. Neal then knelt beside Lewis and searched his pockets. Neal then fled into the street where he got into a parked minivan driven by Harvey and the two fled the scene.

The minivan was eventually recovered in Pittsburgh, Pennsylvania several days later. Harvey was apprehended in Chester, Pennsylvania on November 24, 2011, and eventually returned to Johnstown where he was formally charged as an accomplice to Lewis' murder. Neal was apprehended on March 6, 2012, in Gloucester County, New Jersey when during a routine stop he provided false information to police there. While being transported to the Gloucester

County police department[,] Neal was informed he would be fingerprinted and those prints used to identify him[,] at which point he informed the officers he was wanted by the United States Marshals for murder. Neal was eventually extradited to Pennsylvania and formally charged in connection with Lewis' murder.

During the trial[,] the Commonwealth presented telephone records of cell phones that were identified as being used by Neal and Harvey. These records revealed 73 text messages or phone calls between the two on September 30, 2011[,] and 23 text messages or phone calls between them during the early morning and early afternoon of October 1, 2011. There were five contacts between noon and 1 p.m. that day and the final contact between the phones was 28 minutes before the shooting. Based on these contacts the Commonwealth contended that Neal and Harvey had conspired to kill Lewis. Neal argued that he did not intend to kill Lewis[,] but when Lewis shouldered past him he panicked and thought Lewis meant to attack him resulting in Neal defending himself with the [handgun]. Neal argued that the combination of alcohol and drugs rendered him incapable of forming the specific intent to commit murder and explained his state of mind and mistaken belief that Lewis intended to attack him.

Trial Court Opinion, 10/4/13, at 3-5.

After a six-day trial, the jury returned a verdict finding Neal guilty of third-degree murder, flight to avoid apprehension, and two counts of aggravated assault. The jury convicted Harvey of voluntary manslaughter and one count of aggravated assault as Neal's accomplice, and flight to avoid

apprehension and hindering apprehension as a principal actor.[1] The trial court sentenced Harvey on March 5, 2013 to an aggregate term of 9½ to 25 years of incarceration. On March 15, 2013, Harvey filed a post-sentence motion challenging the trial court's ruling allowing the Commonwealth to amend the criminal information during trial; the sufficiency of the evidence to convict him of voluntary manslaughter; the sufficiency of the evidence to prove that he was Neal's accomplice; the trial court's ruling permitting evidence of a prior bad act, *i.e.*, the fight between Harvey and the victim the night before the victim's death; and the sufficiency of the evidence to convict him of hindering apprehension and flight to avoid apprehension. Following argument, the trial court denied the motion on July 3, 2013.

On July 22, 2013, Harvey filed a timely notice of appeal, followed by a court-ordered concise statement of errors complained of on appeal. The trial court issued a responsive opinion pursuant to Pa.R.A.P. 1925(a) on October 4, 2013.

On appeal, Harvey raises the following issues for our review:

> I. Whether the court erred in denying Appellant Harvey's petition for a writ of *habeas corpus* regarding [Harvey's] alleged accomplice liability in the case?

---

[1] 18 Pa.C.S.A. §§ 2503(a), 2702(a)(1), 306(b), 5126(a), 5105(a)(2). The jury acquitted Harvey of first-degree murder (*id.* § 2502(a)), third-degree murder (*id.* § 2502(c)), and aggravated assault with a deadly weapon (*id.* § 2702(a)(4)).

II.   Whether the court erred in allowing the Commonwealth to present evidence under Pa.R.E. 404(b), *i.e.*, evidence of the fight?

III.  Whether the court erred in allowing the Commonwealth's motion to amend [the] information at the end of trial?

IV.   Whether the court erred in allowing the jury to convict [Harvey] of voluntary manslaughter as an accomplice when the principal, [] Neal, was not convicted of voluntary manslaughter?

V.    Whether the verdict of the jury was contrary to the weight and sufficiency of the evidence presented by the Commonwealth?

Harvey's Brief at 6-7.

We begin with Harvey's first issue assailing the trial court's denial of his writ of *habeas corpus*. Our review of the argument raised reveals that he is actually challenging the sufficiency of the evidence to prove that he acted as Neal's accomplice.[2] ***See id.*** at 11-15. As Harvey included a claim challenging the sufficiency of the evidence in both his 1925(b) statement

---

[2] A claim that the trial court erred by denying a writ of *habeas corpus* because the evidence presented at the preliminary hearing was insufficient to hold the charge(s) over for court is not reviewable once the defendant has been adjudged guilty. ***Commonwealth v. Lee***, 662 A.2d 645, 650 (1995); ***see also Commonwealth v. Melvin***, __ A.3d __, 2014 WL 4100200, *24 (Pa. Super. Aug. 21, 2014) ("Once a defendant has gone to trial and has been found guilty of the crime or crimes charged, [...] any defect in the preliminary hearing is rendered immaterial."). Therefore, even if Harvey had presented an argument in support of his *habeas corpus* claim, it would not be reviewable by this Court.

and his statement of questions involved section of his appellate brief, we will review this issue.[3]

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Murray***, 83 A.3d 137, 151 (Pa. 2013). We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the jury to find every element of a crime beyond a reasonable doubt. ***Commonwealth v. Cahill***, 95 A.3d 298, 300 (Pa. Super. 2014).

> In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the

---

[3] The trial court decided the question of whether it erred by denying his writ of *habeas corpus*. ***See*** Trial Court Opinion, 10/4/13, at 9-11. Because of the standard by which we review a sufficiency claim, this does not hamper our review. Moreover, it is well-settled law that we may affirm a trial court's decision on any ground, "even where those grounds were not suggested to or known by the trial court." ***Commonwealth v. Gatlos***, 76 A.3d 44, 62 n.14 (Pa. Super. 2013).

> evidence produced, is free to believe all, part or none of the evidence.

*Id.* (citation omitted).

"A person is legally responsible for the conduct of another person when […] he is an accomplice of such other person in the commission of the offense."  18 Pa.C.S.A. § 306(b)(3).  The law defines an accomplice as follows:

> A person is an accomplice of another person in the commission of an offense if:
>
> (1) with the intent of promoting or facilitating the commission of the offense, he:
>
>> (i) solicits such other person to commit it; or
>>
>> (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
>
> (2) his conduct is expressly declared by law to establish his complicity.

*Id.* § 306(c).

Proving a defendant's guilt as an accomplice requires the satisfaction of a two-prong test:  (1) there must be evidence to show that the defendant "intended to facilitate or promote the underlying offense" and (2) there must be evidence that the defendant "actively participated in the crime or crimes by soliciting, aiding, or agreeing to aid the principal[.]" ***Commonwealth v. Kimbrough***, 872 A.2d 1244, 1251 (Pa. Super. 2005) (citations omitted). "Both requirements may be established wholly by circumstantial evidence.

Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." *Id.* (internal citations and quotation omitted).

Viewed in the light most favorable to the Commonwealth as the verdict winner, the record reflects the following. The night before the shooting, Harvey and the victim engaged in a physical fight, which the victim won. N.T., 1/9/13 (afternoon), at 78, 81-82. Harvey left with Neal in a maroon van. *Id.* at 82-83. Harvey and Neal communicated 73 times by cellphone through voice calls and text messages that night and on the day of the murder.[4] N.T., 1/11/13 (afternoon), at 100. The last such communication took place only 28 minutes before Neal shot the victim. *Id.* at 102. Immediately after shooting the victim, Neal ran to Harvey's waiting car – the maroon van – and the two sped off. N.T., 1/9/13 (afternoon), at 142-44;

---

[4] Although the cellphone numbers in question were not registered in Harvey's or Neal's name, the circumstantial evidence presented supports a finding that these were their phone numbers. Witnesses who had used the numbers to call and speak with Harvey and Neal, respectively, provided the phone numbers to the police. N.T., 1/11/13 (afternoon), at 54, 90. Jeremy Rogers, who was friends with Neal, Harvey and the victim, testified that he knew Harvey's phone to be registered to a person named Amanda Keiper, which was the name of the person to which Harvey's alleged number was in fact registered. *Id.* at 54, 64. Police were unable to locate the person to whom Neal's phone was registered, "Johnny Stroub," and Detective Julie Wagner testified that the given address of the named subscriber was at the Galleria Mall. *Id.* at 98. Furthermore, "Johnny Stroub" had an email address of NoPressure@gmail.com, and Neal's girlfriend had a tattoo that said "no pressure" on her neck. *Id.* at 104; N.T. 1/9/13 (afternoon), at 14.

N.T., 1/10/13, at 156, 201. The van belonged to Harvey's girlfriend, Lisa Carothers, who had let him use the van that day approximately an hour or two before the shooting to go to the grocery store for her, but neither he nor the van returned to her house that day. N.T., 1/10/13, at 68, 70, 227. Harvey abandoned the van in Pittsburgh. *Id.* at 227; N.T., 1/11/13 (morning), at 32. Police ultimately located Harvey in Chester, Pennsylvania almost two months after the shooting. N.T., 1/12/13, at 45.

The evidence, although circumstantial, adequately proves that Harvey aided Neal with the intent of promoting the murder. *See Kimbrough*, 872 A.2d at 1251; *see also Commonwealth v. Causey*, 833 A.2d 165, 173 (Pa. Super. 2003) (evidence that the appellant was the getaway driver when his brother shot the victim is sufficient to prove that the appellant was his brother's accomplice in the shooting). As such, no relief is due.

In his second issue on appeal, Harvey contends that the trial court erred by permitting the Commonwealth to present evidence of the fight between Harvey and the victim the night before the shooting because, according to Harvey, it was prohibited by Pennsylvania Rule of Evidence 404(b). Harvey's Brief at 15-16. Other than a passing reference to Rule 404(b), without including its text, Harvey cites to no law in support of this contention. Overlooking his clear violation of Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, we find this issue meritless.

Rule 404(b) precludes the use of other crimes, wrongs, or acts to show that the defendant acted in conformity when committing the instant crime. Pa.R.E. 404(b)(1). Such evidence may be admissible, however, for other purposes, including but not limited to "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Pa.R.E. 404(b)(2).

The trial court found that the fight was properly admitted as, *inter alia*, proof of motive for the murder. Trial Court Opinion, 10/4/13, at 13. We agree.[5]

> To be admissible to show intent or motive, the evidence must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances. There must be a logical connection between the prior incident and the crime for which the accused is being tried. Important factors to be considered in making this determination include the proximity in time between the incidents; the similarity in the circumstances surrounding the incidents; and whether evidence of the prior crime is necessary to rebut the accused's evidence or contention of accident, mistake or lack of required intent.

**Commonwealth v. Camperson**, 612 A.2d 482, 484 (Pa. Super. 1992) (citations omitted).

---

[5] "The admission of evidence is committed to the sound discretion of the trial court, and our review is for an abuse of discretion." **Commonwealth v. Valcarel**, 94 A.3d 397, 398 (Pa. Super. 2014) (citation omitted).

- 10 -

As stated above, the record reflects that Harvey and the victim fought the night before the murder and that Harvey was on the losing end of that fight. N.T., 1/9/13 (afternoon), at 78, 81-82. Harvey claimed that he was completely uninvolved in the victim's death, and just happened to be at Oakhurst Homes when Neal shot the victim; Neal claimed that he shot the victim out of fear for his own life – believing that the victim was reaching for a gun. *See* N.T., 1/12/13, at 121, 123-24.

There is no question that the victim's murder could be viewed as having been precipitated by the victim beating up Harvey the night before – a possible revenge scenario. The incidents were close in time (only 14 hours apart) and the fight was necessary to prove Neal's intent (and thus, Harvey's intent as his accomplice) in committing the killing. We therefore find no abuse of discretion in the trial court's determination that the evidence was admissible as proof of motive.

Next, Harvey asserts that the trial court erred by permitting the Commonwealth to amend the criminal information, changing the charges of aggravated assault from listing Harvey as an actor to an accomplice, on the last day of trial. Harvey's Brief at 16-18. The trial court found that Harvey was not prejudiced by the amendment and is therefore due no relief. Trial Court Opinion, 10/4/13, at 15.

Pennsylvania Rule of Criminal Procedure 564 permits the trial court to grant the Commonwealth's motion to amend a criminal information "when

there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. If the trial court permits the Commonwealth to amend the information, "the court may grant such postponement of trial or other relief as is necessary in the interests of justice." *Id.* "The purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Mentzer*, 18 A.3d 1200, 1202 (Pa. Super. 2011) (quoting *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa. Super. 2006)). We review this issue "with an eye toward its underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of the procedural rules." *Id.* (citation omitted). Thus, we

> look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

*Sinclair*, 897 A.2d at 1222 (citation omitted).

- 12 -

This Court has identified the following relevant factors to determine whether a defendant suffered prejudice as a result of the trial court's grant of the Commonwealth's motion to amend:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

*Mentzer*, 18 A.3d at 1203 (citation omitted).

The record reflects that the Commonwealth filed its original criminal complaint on February 6, 2012, alleging, *inter alia*, that Harvey committed one count of aggravated assault as Neal's accomplice. Criminal Complaint, 2/6/12, at 3. On March 23, 2012, the Commonwealth charged Harvey by criminal information with one count of aggravated assault as the principal actor. Criminal Information, 3/23/12. The Commonwealth filed a motion to amend the information on January 4, 2013, which the trial court granted, resulting, in relevant part, in the addition of a second count of aggravated assault, with Harvey again listed as the principal actor. *See* Criminal Information, 1/7/13. It was not until the last day of trial, during the testimony of the Commonwealth's final witness, that the Commonwealth sought to amend the information to list Harvey as an accomplice for the two

aggravated assault charges. *See* N.T., 1/12/13, at 48-52. The trial court granted the Commonwealth's request, finding that Harvey was not prejudiced by the amendment. *Id.* at 70.

We agree with the trial court that Harvey suffered no prejudice by the amendment of the information. Harvey was on notice since the time the Commonwealth filed the criminal complaint in the beginning of 2012 that it was the Commonwealth's theory that he acted as Neal's accomplice in the victim's murder and aggravated assault. The Commonwealth charged Harvey with criminal homicide as Neal's accomplice, but because of some error by the Commonwealth (or, as the trial court aptly stated, the Commonwealth's sloppiness), the Commonwealth erroneously listed Harvey as the principal actor in the aggravated assault charges. The amendment did not change the underlying facts – indeed, the facts as presented since the inception of the case solely support a finding that Harvey acted as Neal's accomplice in committing the aggravated assaults.

The only factor that weighs in favor of Harvey – which is also the only argument Harvey makes in his brief on appeal – relates to the timing of the request to amend. Harvey asserts he was necessarily prejudiced because the Commonwealth requested the amendment on the last day of trial. Harvey's Brief at 18. Although Harvey claims "there was simply no time for postponement of trial or other relief in the interest of justice," the record does not reflect that Harvey asked for a continuance or postponement of

trial when the trial court permitted the Commonwealth to amend the information. Moreover, case law reveals that a late request to amend by the Commonwealth is not *per se* prejudicial. **See, e.g., Mentzer**, 18 A.3d at 1203 (affirming trial court's finding of no prejudice where Commonwealth sought to amend information after trial but before sentencing).

Harvey was informed of the criminal acts he was alleged to have committed and the factual scenario underlying those acts, and thus the late amendment to the criminal information does not offend the purpose of Rule 564. **See id.** at 1202; **Sinclair**, 897 A.2d at 1222. We therefore find no error in the trial court's decision to grant the Commonwealth's request to amend Harvey's criminal information.

As his fourth issue on appeal, Harvey argues that the trial court erred by denying his post-sentence motion for a judgment of acquittal for voluntary manslaughter. Harvey's Brief at 18. At its base, the challenge is to the sufficiency of the evidence to convict him of voluntary manslaughter. Harvey's Brief at 18-21. He presents two theories in support of his argument: (1) the elements of the crime of voluntary manslaughter were not established, and (2) Harvey was alleged to have acted as Neal's accomplice and Neal was convicted of third-degree murder, rendering it "impossible" for Harvey to have committed voluntary manslaughter as the getaway driver. **Id.** The trial court found the conviction was proper. Trial Court Opinion, 10/4/13, at 17-18.

We have already concluded that Harvey acted as Neal's accomplice in the victim's murder. *See supra*, pp. 8-9. Thus, Harvey is criminally responsible for the acts committed by Neal. *See* 18 Pa.C.S.A. § 306(a), (b)(3). Our review of the record reveals that Harvey is correct that there was insufficient evidence to convict him (or Neal) of voluntary manslaughter.[6] There was, however, sufficient evidence to convict him of first-degree murder. "A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing." 18 Pa.C.S.A.

---

[6] "A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a **sudden and intense passion** resulting from serious provocation by: (1) the individual killed; or (2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed." 18 Pa.C.S.A. § 2503(a) (emphasis added).

> Emotions encompassed by the term 'passion' include anger, rage, sudden resentment or terror which renders the mind incapable of reason. Whether the provocation by the victim was sufficient to support a heat of passion defense is determined by an objective test: whether a reasonable man who was confronted with the provoking events would become impassioned to the extent that his mind was incapable of cool reflection. Significantly, we have clarified that both passion and provocation must be established, and that if there be provocation without passion, or passion without a sufficient cause of provocation, or there be time to cool, and reason has resumed its sway, the killing will be murder.

*Commonwealth v. Busanet*, 54 A.3d 35, 55 (Pa. 2012) (internal citations and quotations omitted), *cert. denied,* 134 S. Ct. 178 (U.S. 2013). Absent here is sufficient evidence of "passion" or "provocation" without a cooling off period since approximately 14 hours elapsed between the provocation and the killing.

§ 2502(a). "Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." **Commonwealth v. Montalvo**, 956 A.2d 926, 932 (Pa. 2008).

The evidence presented at trial, viewed in the light most favorable to the Commonwealth, reveals that Neal shot the victim with a deadly weapon multiple times. N.T., 1/10/13, at 105. Neal then stood over the victim and shot him in the head as the victim pleaded for his life, killing him. **Id.** at 107. Therefore, all elements of first-degree murder are met.[7]

"Whether an accomplice possessed the same intent to kill as his co-conspirator may be inferred from words, conduct, the attendant circumstances including the actions taken after the killing and all reasonable inferences that follow from them." **Commonwealth v. Rios**, 721 A.2d 1049, 1053 (Pa. 1998). "[F]light and concealment can constitute circumstantial evidence of consciousness of guilt." **Commonwealth v.**

---

[7] Neal presented evidence at trial that he consumed drugs and alcohol the morning of the shooting, rendering him intoxicated to the point of losing his faculties and sensibilities. **See** N.T., 1/12/13, at 101-03, 122-23. This evidence of a diminished capacity permitted the jury to reduce Neal's conviction from first-degree murder to third-degree murder. **See** 18 Pa.C.S.A. 308 ("evidence of [voluntary] intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder"); **Commonwealth v. Padilla**, 80 A.3d 1238, 1263 (Pa. 2013) ("A defense of diminished capacity negates the element of specific intent, and thus mitigates first-degree murder to third-degree murder. […] [T]o prove diminished capacity due to voluntary intoxication, a defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities."), *cert. denied*, 134 S. Ct. 2725 (U.S. 2014).

*Housman*, 986 A.2d 822, 831 (Pa. 2009) (citation omitted). In the case at bar, Neal ran to Harvey's waiting car immediately after shooting the victim and the two sped off. N.T., 1/9/13 (afternoon), at 142-44; N.T., 1/10/13, at 156, 201. Harvey abandoned the van in Pittsburgh and fled to Chester, Pennsylvania, where police located him almost two months later. *Id.* at 227; N.T., 1/11/13 (morning), at 32; N.T., 1/12/13, at 45. Based upon Harvey's actions following the murder, we conclude that he could have properly been convicted of first-degree murder.

The jury, however, chose to convict Harvey of voluntary manslaughter, a verdict inconsistent with the evidence presented and the conviction of Harvey's accomplice, the principal actor. In relation to inconsistent verdicts, our Supreme Court has stated:

> The question before us implicates the general issue of inconsistent verdicts, which, under longstanding federal and state law, are allowed to stand so long as the evidence is sufficient to support the conviction.
>
> \* \* \*
>
> [A]lthough an inconsistent verdict constitutes jury 'error,' it is not at all clear whether the error was made at the expense of the Government or the defendant. Given this uncertainty, and the fact that the Government is precluded [by double jeopardy considerations] from challenging the acquittal, it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course.
>
> \* \* \*

> While recognizing that the jury's verdict appears to be inconsistent, we refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision. Whether the jury's verdict was the result of mistake, compromise, lenity, or any other factor is not a question for this Court to review. We reaffirm that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal.

***Commonwealth v. Miller***, 35 A.3d 1206, 1208, 1209, 1213 (Pa. 2012) (internal citations and quotations omitted).

The fact that Harvey's conviction differs from that of Neal is also not problematic. In fact, our legislature has specifically stated that an accomplice may be convicted in the absence of a conviction or even the prosecution of the principal actor. 18 Pa.C.S.A. § 306(g).

As the evidence presented supports a finding of Harvey's guilt as an accomplice in the victim's murder, we find no basis to grant him the acquittal he requests.

As his final issue on appeal, Harvey raises a general challenge to the weight and sufficiency of the evidence to support his convictions. Beginning with his weight claim, we note that Harvey did not raise this either at sentencing or in a post-sentence motion. It is therefore waived. Pa.R.Crim.P. 607(A); ***Commonwealth v. Thompson***, 93 A.3d 478, 490 (Pa. Super. 2014).

His generalized challenge to the sufficiency of the evidence is likewise waived. In his 1925(b) statement, Harvey frames his sufficiency claim as, "Whether the verdict of the jury was contrary to the weight and sufficiency of the evidence presented by the Commonwealth." 1925(b) Statement, 8/13/13, at ¶ 5. This is insufficient to preserve a challenge to the sufficiency of the evidence for appeal. As this Court has previously held:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

***Commonwealth v. Garland***, 63 A.3d 339, 344 (Pa. Super. 2013) (internal citations omitted). Failure to properly preserve a sufficiency claim results in its waiver on appeal. ***Id.***

Regardless of waiver of his sufficiency claim, the only arguments he raised in his brief on appeal challenge the sufficiency of the evidence to convict him of voluntary manslaughter and aggravated assault. Harvey's Brief at 21-25. As we have already determined that the evidence was sufficient to convict him of aggravated assault as an accomplice and voluntary manslaughter by rejecting his judgment of acquittal argument, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2014